(No. 53487.—

ILLINOIS HOUSING DEVELOPMENT AUTHORITY, Appellee, v. A. D. VAN METER, JR., Chairman of the Illinois Housing Development Authority, Appellant.

*Opinion filed October 10, 1980.*

KLUCZYNSKI, J., dissenting.

Pfeifer & Kelty, P.C., of Springfield (Thomas W. Kelty, of counsel), for appellant.

Rooks, Pitts, Fullagar & Poust, of Chicago (Alan S. Ganz and Margaret S. Garvey, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of Sangamon County declared valid an amendment to the Illinois Housing Development Act (amendment) which authorized the issuance of municipal bonds by plaintiff, the Illinois Housing Development Authority (Authority), to raise low-interest mortgage money. The court issued a writ of *mandamus* ordering defendant, A. D. Van Meter, Jr., as chairman of the Authority, to execute a notice of sale of bonds and to take all action necessary to issue the bonds.

The Authority was created in 1967 (Ill. Rev. Stat. 1967, ch. 67½, par. 301 *et seq.*) to remedy what the legislature found to be a serious shortage of decent, safe and sanitary housing available to persons and families of low and moderate income (Ill. Rev. Stat. 1967, ch. 67½, par. 303). In furtherance of this purpose, the legislature, in 1979, passed the amendment at issue, which provides in part:

> "(b) The Authority may have outstanding at any one time bonds and notes in an aggregate principal amount not exceeding $50,000,000, in addition to the amount authorized in subsection (a), which additional amount shall be used solely for the purposes of making loans to lending institutions, as provided for in Section 7.24 of this Act, for use by such institutions in making residential mortgage loans where the proposed owner-occupant, who shall be an Illinois resident, has never previously owned a single-family home or condominium and where each of such loans made by the participating lending institutions is for an amount which does not exceed 95% of the value of the property which is to be purchased with the proceeds of the loan. Of the proceeds of bonds issued under authority of this subsection (b), one-half shall be allocated for use in counties with a population of over 3,000,000 and one-half for use in the remainder of the State. The interest charged by the lending institutions on such residential mortgage loans shall not be less than .5% nor more than 1% above the interest rate on the bonds authorized by this subsection."

Ill. Rev. Stat., 1979 Supp., ch. 67½, par. 322(b).

To implement the amendment, the Authority adopted a resolution that authorized the issuance of $50 million in bonds to fund the above-quoted subsection and directed the defendant to execute said bonds. By separate resolution, the Authority directed the defendant to publish a notice of sale inviting bids for the purchase of the bonds. However, the defendant refused either to execute the bonds or publish the notice as directed by the resolution and plaintiff instituted this action. This court allowed direct appeal under Rule 302(b). 73 Ill. 2d R. 302(b).

Defendant contends that the amendment, by restricting recipients of mortgage loans to persons in families who have never owned a single-family home or condominium, (1) violates the equal protection clauses of both the United States and Illinois constitutions, and (2) constitutes special legislation in violation of article IV, section 13, of the Illinois Constitution.

The first test in assessing an equal protection claim is to determine if the amendment herein at issue operates to the disadvantage of a suspect class or infringes upon a fundamental right. (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 17, 36 L. Ed. 2d 16, 33, 93 S. Ct. 1278, 1288.) If the legislation in question creates a "suspect classification," such as race (*Loving v. Virginia* (1967), 388 U.S. 1, 11, 18 L. Ed. 2d 1010, 1017, 87 S. Ct. 1817, 1823), alienage (*Graham v. Richardson* (1971), 403 U.S. 365, 371-72, 29 L. Ed. 2d 534, 541-42, 91 S. Ct. 1848, 1851-52), national origin (*Oyama v. California* (1948), 332 U.S. 633, 646, 92 L. Ed. 249, 259, 68 S. Ct. 269, 275), or infringes upon a fundamental right, such as the right to travel (*Shapiro v. Thompson* (1964), 394 U.S. 618, 634-35, 22 L. Ed. 2d 600, 615, 89 S. Ct. 1322, 1331-32), the right to vote (*Harper v. Virginia State Board of Elections* (1966), 383 U.S. 663, 670,

16 L. Ed. 2d 169, 174, 86 S. Ct. 1079, 1083), or the right to fair treatment in the criminal process (*Douglas v. California* (1963), 372 U.S. 353, 355-56, 9 L. Ed. 2d 811, 813-14, 83 S. Ct. 814, 815-16), then the statute must promote a compelling or overriding State interest. If a suspect classification or fundamental right is not found, the legislation simply must bear a rational relationship to a legitimate governmental interest. *Dandridge v. Williams* (1970), 397 U.S. 471, 485-87, 25 L. Ed. 2d 491, 501-03, 90 S. Ct. 1153, 1161-62.

The defendant argues that the amendment creates a suspect classification based upon wealth, which, in itself, should trigger a review under a strict-scrutiny standard. However, where no fundamental right is involved, the United States Supreme Court repeatedly has applied the rational-relationship test to legislative classifications based upon wealth. In *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278, legislation was enacted invoking a property tax system which financed school districts in a manner that created subsidiary districts with educational opportunities based on the wealth of the district in which the child resided. There, the court applied the rational-relationship test:

"[T]his Court has never heretofore held that wealth discrimination alone provides an adequate basis for invoking strict scrutiny ***." 411 U.S. 1, 29, 36 L. Ed. 2d 16, 40, 93 S. Ct. 1278, 1294.

Based upon this test the court found no violation of the equal protection clause. The court considers such wealth classifications to be regulations concerning economic and social welfare policy that do not merit active judicial review under the strict-scrutiny or compelling-interest standards. See *Dandridge v. Williams* (1970), 397 U.S. 471, 485-87, 25 L. Ed. 2d 491, 501-03, 90 S. Ct. 1153, 1161-62; *Jefferson v. Hackney* (1972), 406 U.S. 535, 546-49,

32 L. Ed. 2d 285, 295-98, 92 S. Ct. 1724, 1731-32 (upholding a legislative classification that limited the receipt of welfare benefits); *James v. Valtierra* (1971), 402 U.S. 137, 141-43, 28 L. Ed. 2d 678, 682-83, 91 S. Ct. 1331, 1333-34 (upholding a constitutional classification limiting low-income public housing).

We conclude, under the above authority, that legislation based on wealth does not constitute, *per se,* a suspect classification under the equal protection clauses of either the United States or Illinois constitutions.

Although defendant concedes there are "no cases squarely holding that housing is a fundamental right," he asks this court to treat the right to housing as such a right, "due to the seriousness of the problem," and apply the "suspect" test in this instance. The United States Supreme Court has clearly ruled that a right to private housing is not a fundamental right. (*Village of Belle Terre v. Boraas* (1974), 416 U.S. 1, 7, 39 L. Ed. 2d 797, 803, 94 S. Ct. 1536, 1540; *Lindsey v. Normet* (1972), 405 U.S. 56, 74, 31 L. Ed. 2d 36, 50-51, 92 S. Ct. 862, 874.) Consequently, the court has always applied the rational-relationship test to government actions that might burden a person's ability to find adequate housing. We hold in the instant case that a wealth classification infringing on a person's right to housing, a nonfundamental right, should be examined under a rational-relationship standard of review.

Under the traditional equal protection standards utilized by both the Federal and State courts, a legislative classification will be upheld if it bears a rational relationship to a legitimate legislative purpose. (*McGowen v. Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 398-99, 81 S. Ct. 1101, 1104-05; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) Thus, the inquiry shifts to an analysis of the legislative purpose and a subsequent determination whether the legislative classification is rationally related to that purpose. *In re Estate of Karas* (1975), 61

Ill. 2d 40, 47-48.

As earlier noted, the Authority was established to remedy a serious shortage of decent, safe and sanitary housing available to persons and families of low and moderate income. The defendant concedes that issuance of bonds for the purchase of houses and condominiums is a proper public purpose within the scope of the Illinois Housing Development Act. The question has thus become whether the legislative classification created by the amendment is rationally related to the purpose set forth in the original act.

Under traditional concepts of equal protection, *i.e.*, when a rational-basis test is used, a legislative classification is presumed valid. (*Lindsey v. Normet* (1972), 405 U.S. 56, 71, 31 L. Ed. 2d 36, 49, 92 S. Ct. 862, 873; *In re Estate of Karas* (1975), 61 Ill. 2d 40, 47.) The burden of rebutting the presumptive validity of the classification rests upon the party challenging its constitutionality. (*People v. Sherman* (1974), 57 Ill. 2d 1, 4.) Finally, a statutory classification will not be declared unconstitutional "if any state of facts reasonably may be conceived to justify it." *McGowen v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105; *Lindsey v. Normet* (1972), 405 U.S. 56, 70, 31 L. Ed. 2d 36, 48, 92 S. Ct. 862, 872.

Defendant argues that the amendment, by limiting its application to first-time home and condominium buyers, does not rationally relate to the legislative purpose of providing housing for persons with low and moderate income. Defendant states that a homeowner who is purchasing another home is not necessarily in a better financial position than a first-time home buyer. Yet, the defendant neither presents any factual basis nor any legal authority to support this statement. The unsupported opinions of the defendant are insufficient to overcome the presumption that the law is constitutional.

The plaintiff, on the other hand, presents two studies that indicate non-first-time purchasers of homes are in a better position to afford a home than first-time home buyers. (See Homeownership: The Changing Relationship Of Costs and Incomes And Possible Federal Roles, prepared by the Congressional Budget Office, Congress of the United States, Washington, D.C., January 1977, and Homeownership: Coping With Inflation, prepared by the United States League of Savings Associations, Chicago, Illinois, 1980.) Both studies conclude that affordability presents a greater problem for the first-time home buyer than for repeat buyers. In the period between 1977 and 1979 the percentage of total purchases made by first-time buyers dropped over 50% from 36.3% to 17.8%. Homeownership: Coping With Inflation 3.

We recognize that the legislative classification established by the amendment may exclude certain non-first-time purchasers who are in greater financial need than some first-time home buyers. However, even though the statute could have been drawn to include such repeat purchasers there is no requirement that a statutory classification be accurate, scientific or harmonious so long as it is not arbitrary and will accomplish the legislative design. *People v. Valdez* (1980), 79 Ill. 2d 74, 83-84; *Schiller Park Colonial Inn, Inc. v. Berg* (1976), 63 Ill. 2d 499, 512.

The aforementioned studies indicate that *generally speaking* in a statistical sense, first-time home buyers are less able to afford a home than a second- or third-time purchaser. As the homeownership study states, "[W]hile inflation in home prices represents a barrier to the first-time buyer, it also means appreciation in the value of the typical repurchaser's largest asset." Homeownership: Coping With Inflation 15.

The studies present a set of facts that reasonably may be conceived to justify the law. Thus, under the test announced by the United States Supreme Court in

*McGowen v. Maryland* and *Lindsey v. Normet,* and by this court in *Illinois Association of Firefighters, Local 73 v. City of Waukegan* (1967), 37 Ill. 2d 423, 425, we find the statutory classification of the amendment bears a rational relationship to the legitimate legislative purpose of providing financing for housing to low- and moderate-income families. We hold, therefore, that the amendment does not violate the equal protection clauses of either the Federal or Illinois constitutions.

Defendant next asserts that the amendment constitutes special legislation in violation of section 13 of article IV of the Illinois Constitution. This court has held that the same standards applied in both Federal and State equal protection analyses are utilized to determine violations of the special legislation provision of the Illinois Constitution. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76-77.) Thus, the special legislation section of the Illinois Constitution allows differentiations between similarly situated persons if the classification bears a rational relationship to a legitimate legislative purpose. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.

*Anderson* involved the validity of section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), which provides a special limitations period for medical malpractice actions against physicians and hospitals. This court upheld the law against plaintiff's attacks based upon the equal protection clauses of the Federal and State constitutions and the special legislation provision of section 13 of article IV of the Illinois Constitution, stating:

> "No doubt a general statute of limitations which was not limited in its applicability to only physicians and hospitals but applied to all personnel and institutions administering health care would have achieved whatever end this legislative response to the medical malpractice insurance crisis was seeking to achieve. In fact, a statute of limitations that

would apply to all professional malpractice cases would have achieved the result. The sentence in section 13 of article IV of our constitution— Whether a general law is or can be made applicable shall be a matter for judicial determination—does not prohibit classification of persons and objects. As noted in *Skinner v. Anderson* [(1967), 38 Ill. 2d 455], however, the classifications must be reasonably related to the legislative purpose and it must appear that there is a sound basis for regarding the class as distinct and separate for the purpose of the legislation." (79 Ill. 2d 295, 320.) This court concluded that because the statute bore some rational relationship to the legislative purpose, it was not special legislation falling within the proscription of the Illinois Constitution. See also *Youhas v. Ice* (1974), 56 Ill. 2d 497, 502; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 110-11; *People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 217.

Similarly, in the instant case, the category could have been made broader or more precise. Nevertheless, we have found, like the statute in *Anderson v. Wagner,* the amendment is rationally related to a proper legislative purpose. Consequently the statute does not fall within the special legislation prohibition of the Illinois Constitution.

For the reasons stated, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

By virtue of its decision in this case, the majority upholds a statutory amendment which confers a special legislative benefit on a particular group of citizens to the exclusion of others of like circumstance. While an equal protection analysis may not suffice to expose the invidious nature of this legislative action, the special legislation

clause found in our constitution nonetheless provides a means by which more meaningful judicial review can be undertaken and the fallacy of this legislation can be shown. I therefore dissent.

As the majority acknowledges, the purpose of the Illinois Housing Development Act is "to remedy what the legislature found to be a serious shortage of decent, safe and sanitary housing available to persons and families of low and moderate income." (82 Ill. 2d at 118.) Given this purpose, the amendment, limiting participation in the mortgage program to those who have "never previously owned a single-family home or condominium," simply cannot withstand scrutiny under the special legislation prohibition of the Illinois Constitution. The purpose of the statute can be fulfilled by an amendment drafted in more general terms consonant with that purpose, and the special legislative benefit conferred only upon first-time buyers therefore cannot stand. The benefit must be afforded equally among those with low and moderate income, regardless of whether they have previously owned a home. The need for decent, safe and sanitary housing, and for assistance in obtaining that housing, can be as great for one who has previously owned a home as it is for one who is a first-time buyer. The fact of previous ownership at some point in the individual's lifetime does not *ipso facto* establish a preferred financial status. An individual, for example, may have been forced to sell his home without profit or at a loss, and the fact of prior ownership will not help him one iota in mustering funds for a downpayment on another home. This is recognized even by the Congressional Budget Office report relied upon so heavily by the majority. That report states that one who has previously owned a home will have "no difficulty meeting the downpayment for a different home," but it acknowledges that this general assertion is true only "if their original house had shared in even a small part of the general increase in

sales prices." Homeownership: The Changing Relationship Of Costs And Incomes And Possible Federal Roles, prepared by the Congressional Budget Office, Congress of the United States, Washington, D.C., January 1977, at xv.

The majority's failure to recognize that the amendment before us is special legislation can only be attributed to its faulty perception of the court's role in addressing attacks made under the special legislation provisions of our constitution and its erroneous belief that a special legislation challenge is foreclosed by an unsuccessful equal protection attack. The constitutional provisions prohibiting special legislation provide: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, sec. 13.) In *Grace v. Howlett* (1972), 51 Ill. 2d 478, 487, the court held that these provisions do not cover the same ground as the equal protection clause and that "the new section 13 of article IV has increased judicial responsibility for determining whether a general law 'is or can be made applicable.' " In invalidating an imprecisely drawn statute, the court held that it cannot withhold a determination that a statute is special legislation simply because that statute withstands analysis under the highly deferential rational-relationship standard of equal protection review. The court's language on this point is of equal relevance here:

"Unless this court is to abdicate its constitutional responsibility to determine whether a general law can be made applicable, the available scope for legislative experimentation with special legislation is limited, and this court cannot rule that the legislature is free to enact special legislation simply because 'reform may take one step at a time.' (See, *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct.

461.) The constitutional test under section 13 of article IV is whether a general law can be made applicable, and in this case that question must receive an affirmative answer." (51 Ill. 2d 478, 487.)

(See also *Skinner v. Anderson* (1967), 38 Ill. 2d 455; *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60.) The court's most recent pronouncements on the subject of special legislation, and its recent treatment of the *Grace, Skinner* and *Harvey* cases above cited, are indefensible. (See, *e.g., Anderson v. Wagner* (1979), 79 Ill. 2d 295, 316 (equating special legislation analysis with equal protection analysis), *appeal dismissed* (1980), 449 U.S. ——, 66 L. Ed. 2d 11, 101 S. Ct. 54; *Friedman & Rochester v. Walsh* (1977), 67 Ill. 2d 413, 421-23 (same).) The majority today continues on that ill-advised course.

In summary, it is clear to me that a general law would solve the problem perceived by the legislature. I therefore cannot join the majority.