574 N.E.2d 245 (1991)
214 Ill. App.3d 1014
158 Ill.Dec. 451
In the Matter of the ESTATE OF John R. WEBSTER, Deceased George W. Williams, Executor-Appellant,
v.
Edith L. Hardy, Legatee-Appellee; State of Illinois, Appellee.
No. 1-90-2605.
Appellate Court of Illinois, First District, Fifth Division.
June 7, 1991.
*247 Robert B. Williams, Toledo, Ohio, for executor-appellant.
Jack O'Malley, State's Atty. of Cook County, Joan S. Cherry, Deputy State's Atty., Civ. Actions Bureau, Donald M. Devlin, Asst. State's Atty., Supervisor, Sp. Litigation, *248 Sheila Threlkelk, Asst. State's Atty., of counsel, Chicago, for appellee, State of Ill.
Justice MURRAY delivered the opinion of the court:
This action was filed in the circuit court of Cook County, Illinois for probate of the will of John R. Webster, and for distribution of the testator's assets thereunder. The circuit court ruled that the legacy to Betty Hardy Williams, testator's stepdaughter, and the contingent residuary legacy to Robert Bruce Williams, testator's stepgrandson, both lapsed pursuant to section 4-6 of the Illinois Probate Act (Probate Act), and that the testator's estate should pass in its entirety to his other stepdaughter, legatee Edith L. Hardy. The executor of the estate, George W. Williams, appeals the order of the Probate Court of Cook County distributing the assets of the estate.
The executor appeals the court's order contending that the provision of the Probate Act providing for the lapsing of the stepgrandson's legacy is unconstitutional as well as violative of the Civil Rights Act of 1871. The State's Attorney of Cook County has filed a brief contending that the executor's arguments are without merit. At issue is a provision of the Probate Act which makes void a legacy to a person or his or her spouse who attests to a will unless the will is otherwise duly attested by a sufficient number of witnesses provided by the Probate Act. Ill.Rev.Stat.1989, ch. 110½, par. 4-6.
The pertinent provision of the disputed section of the Probate Act reads as follows:
"(a) If any beneficial legacy or interest is given in a will to a person attesting its execution or to his spouse, the legacy or interest is void as to that beneficiary and all persons claiming under him, unless the will is otherwise duly attested by a sufficient number of witnesses as provided by this Article exclusive of that person and he may be compelled to testify as if the legacy or interest had not been given, but the beneficiary is entitled to receive so much of the legacy or interest given to him by the will as does not exceed the value of the share of the testator's estate to which he would be entitled were the will not established." Ill.Rev.Stat.1989, ch. 110½, par. 4-6(a).
The facts in this case are undisputed:
Edythe Louise Webster predeceased her spouse, John R. Webster. The will of John Webster was admitted to probate in 1988. It provided, among other things, that in the event his spouse predeceased him all his property would go to his stepdaughters, Edith L. Hardy and Betty Hardy Williams. Should only one stepdaughter survive him and his spouse all the property should go to the surviving stepdaughter. The will also provided that all the property not otherwise effectively disposed of by the will go to his stepgrandson Robert Bruce Williams.
Attesting the will were two witnesses: (1) George W. Williams, the husband of Betty Hardy Williams, and (2) Muriel E. Williams, the wife of stepgrandson Robert Bruce Williams. George Williams was named executor of the estate. He was unable to receive a fee under section 4-6 of the Probate Act due to the fact that he had also served as an attesting witness. Edith Hardy claimed that the legacies were void under the aforecited section of the Probate Act and that Webster's intent was to create a class gift to his two stepdaughters. The County contended that the legacies to Betty and Robert Williams lapsed under the terms of the Probate Act and the lapsed legacies should be distributed to Webster's heirs. The trial court ruled that the legacies did lapse and that Webster intended to create a class gift to his stepdaughters Edith Hardy and Betty Williams. Consequently, the trial court ordered the entire legacy go to Edith Hardy, the sole survivor of that class. The executor asserted that the aforecited section of the Probate Act was unconstitutional. The trial court rejected the executor's argument. Subsequently, the executor filed this timely appeal.
For the following reasons we affirm the decision of the trial court.
The executor raises the following arguments in support of his contention that section 4-6 of the Illinois Probate Act is, on its face, and, as applied to the estate of *249 John R. Webster by the circuit court unconstitutional:
(1) Section 4-6 is a Bill of Attainder;
(2) Section 4-6 creates a classification among persons between whom there are no real and substantial differences;
(3) Section 4-6 creates a "suspect" classification which unreasonably, arbitrarily, and invidiously discriminates against the marital relationship;
(4) Section 4-6 violates the procedural due process rights of certain legatees by imposing upon them disabilities without first providing them the opportunity to be heard in defense;
(5) Section 4-6 creates an irrebuttable presumption of overreaching duress, or undue influence respecting a class of legatee without the requirement of any proof of wrongdoing, or forum; and
(6) Section 4-6 is special legislation, a regulatory law that unfairly distributes burdens and benefits to no one.
The executor further argues that section 4-6 violates the Civil Rights Act of 1871.

I
First, the claim that section 4-6 of the Probate Act is a bill of attainder is without merit. Article 1, section 10 of the United States Constitution prohibits a state from, among other things, passing any bill of attainder. "Bills of attainder are legislative acts inflicting punishment on certain persons without judicial trials." Pickus v. Board of Education (1956), 9 Ill.2d 599, 611, 138 N.E.2d 532.
The section of the Probate Act attacked does not punish anyone without a trial, it merely regulates the drafting of wills. It is more akin to the regulation of governmental contracts by precluding the award of such contracts to people involved in the bribery of public officials. Such regulatory acts are not bills of attainder. (Polyvend Inc. v. Puckorius (1979), 77 Ill.2d 287, 32 Ill.Dec. 872, 395 N.E.2d 1376.) The fact that a statute is narrowly focused does not make it a bill of attainder if it does not inflict punishment without judicial trial. (People v. Gurell (1983), 98 Ill.2d 194, 74 Ill.Dec. 516, 456 N.E.2d 18.) The section attacked does not punish stepchildren or their spouses, it merely provides for a regulation as to proper attestors to a will. If the will had been attested to by two disinterested persons unrelated by marriage to the legatees, their gifts would not have lapsed. Section 4-6 of the Illinois Probate Act is not a bill of attainder.

II
The executor's argument that section 4-6 of the Probate Act creates an unconstitutional classification is also without merit. The basis for this argument appears to be that the Probate Act singles out witnesses having a marital relationship with a legatee and disregards and ignores other relationships such as live-ins and lovers. There is no prohibition against classifying by the legislature unless there is no rational basis for the classification. The statute under attack does not preclude spouses of stepdaughters or stepgrandsons from inheriting or from being a beneficiary of a will. It merely regulates the witnessing of a will to prevent or deter fraud and undue influence. Smith v. Goodell (1913), 258 Ill. 145, 101 N.E. 255.
A statutorily valid will must be attested to by at least two credible persons. (Ill.Rev.Stat.1989, ch. 110½, par. 4-3.) The expression "credible" witness means competent witness. (Scott v. Couch (1915), 271 Ill. 395, 111 N.E. 272.) The test of interest affecting one's competency as a witness to a will is whether he will gain or lose pecuniarily thereby. (Jones v. Grieser (1909), 238 Ill. 183, 87 N.E. 295.) Attesting witnesses are regarded as persons placed around the testator in order that no fraud may be practiced upon him in the execution of the will and to judge his capacity. (In re Estate of Weaver (1977), 50 Ill.App.3d 223, 8 Ill.Dec. 652, 658, 365 N.E.2d 1038, 1044; Smith v. Goodell (1913), 258 Ill. 145, 101 N.E. 255.) Not only a legatee, but also a person named as executor or trustee is prevented from attesting to a will (see Fearn v. Postlehwaite (1909), 240 Ill. 626, 88 N.E. 1057.) The law favors admission of a will to probate in order that administration of estate may proceed, but requirements *250 of the statute are mandatory and must be complied with. Ill.Rev.Stat.1989, ch. 110½, par. 6-4(a).
The statute must be applied such that if the will is duly attested by two credible, disinterested witnesses, then the witnesses who have an interest under the will may take. (In re Estate of Watts (1979), 67 Ill.App.3d 463, 23 Ill.Dec. 795, 384 N.E.2d 589.) The policy of the statute is not to deny the right of spouses or others to attest the will, but rather it is to require two credible witnesses to prevent attesting witnesses from bootstrapping the interests of one another. (In re Estate of Watts (1979), 67 Ill.App.3d 463, 465, 23 Ill.Dec. 795, 796, 384 N.E.2d 589, 590.) The objective of the legislation is the assurance of the credibility of witnesses to a will. Further, section 4-6 provides a vehicle whereby a will may still be upheld as valid even if the will gives an attesting witness an interest. Thus, we conclude that the classification is proper and not constitutionally defective.

III
Third, the executor argues that the statute creates a suspect classification which unreasonably, arbitrarily and invidiously discriminates against marital relationships. This argument is also without merit.
In considering this question, we must first define the proper test to be applied to the challenged legislation. At oral arguments appellant conceded that the appropriate test was something less than strict judicial scrutiny, but maintained that the appropriate test was more than the rational basis test. The county, on the other hand, claims that the statute in question does not involve a suspect classification in that it is not premised upon race or national origin, nor is any fundamental right involved, therefore, the rational basis test should apply in determining whether equal protection has been violated in creating the classification.
Suspect classes are classifications created along lines of race or national origin. (Trimble v. Gordon (1977), 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31.) Strict judicial scrutiny will only be imposed when a classification is based on a suspect trait. (Mathews v. Lucas (1976), 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651.) In matters relating to economics or social welfare, the proper test in determining whether a classification violates the Equal Protection clause is whether the classification is reasonable and whether it has a fair and substantial relation to the object of the legislation so that all persons similarly situated are treated alike. (Reed v. Reed (1971), 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225.) Thus, the standard for review regarding the constitutionality of section 4-6 is whether there is some rational basis for the different treatment of witnesses whose spouses are legatees under the will and whether that treatment is related to a legitimate State objective.
Illinois courts have held that the spouse of a legatee or devisee under a will is not a competent attesting witness to that will. (Sloan v. Sloan (1900), 184 Ill. 579, 56 N.E. 952; Fearn v. Postlehwaite (1909), 240 Ill. 626, 88 N.E. 1057.) The statute at issue does not invidiously discriminate against anyone. Discrimination between husband and wife in the role of a witness has been the law since the common law was adopted. For example in criminal cases, with limited exceptions, a husband and wife were incompetent to testify for or against each other. (People v. Palumbo (1955), 5 Ill.2d 409, 125 N.E.2d 518.) The disqualification was rested in part upon their interest, in part upon the common law notion of the unity of a husband and wife, and in part upon a desire to promote domestic tranquility. (People v. Palumbo (1955), 5 Ill.2d 409, 412-13, 125 N.E.2d 518.) Although this rule is largely relaxed today, some semblance of it still remains in our Illinois Code of Civil Procedure. (See Ill.Rev.Stat. 1989, ch. 110, par. 8-801.) Moreover, the statute at issue does not preclude a husband or wife from acting as a witness to his or her parents' or stepparents' will, it merely provides that if one does witness the will and there are insufficient competent *251 or disinterested witnesses, his or her legacy is lapsed.
The Probate Act further supports the idea that the marital relationship is unique. In the event of the death of one's spouse, a surviving spouse is always entitled to receive a portion of the testator's estate. Whether or not a will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: 1/3 of the entire estate if the testator leaves a descendant, or ½ of the entire estate if the testator leaves no descendant. (Ill.Rev.Stat. 1989, ch. 110½, par. 2-8(a).) No individual other than a surviving spouse is always entitled to receive a portion of a testator's estate.
Classifications are not per se unconstitutional. Their constitutionality depends upon the character of the classification and its relation to legitimate legislative aims. (Mathews v. Lucas (1976), 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651.) The Equal Protection Clause of the Fourteenth Amendment does not deny the State the power to treat separate classes of persons differently. The clause only prohibits states from legislating different treatment to classes of persons based on criteria wholly unrelated to the objective of that statute. (Eisenstadt v. Baird (1972), 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349.) Nothing in the record suggests that the Probate Act is only applied to a certain class of people based on their race, creed, or origin, by its terms, the Probate Act applies to all persons similarly situated, i.e. legatees and/or their spouses.
Relationship of a husband and wife is a unique relationship granted privileges in our society. As a result of the desire to promote that relationship, public policy dictates that spouses are not viewed as competent witnesses to attest to the execution of a will in which their spouse is to receive an interest. The right to make a will, and the right to take property under a will exist only by virtue of the statutes, and are entirely subject to their provisions. (Robertson v. Yager (1927), 327 Ill. 346, 158 N.E. 709.) Nothing in the Probate Act precludes legatees or their spouses from taking under a will, the Probate Act merely provides that a will must be properly attested by two credible witnesses. In this case, the will was not attested by two disinterested witnesses as required by the statute, consequently, the interests of Betty Hardy Williams and Robert Bruce Williams were properly found to be void by the trial court.

IV
Fourth, the executor argues that section 4-6 of the Probate Act violates the procedural due process rights of certain legatees by imposing upon them disabilities without first giving the legatees an opportunity to be heard in defense. This argument also lacks merit. The starting point in any due process analysis is a determination of whether a protectable interest is present, for if there is not, no process is due. Polyvend v. Puckorius (1979), 77 Ill.2d 287, 294, 32 Ill.Dec. 872, 395 N.E.2d 1376.
"It is fundamental that the constitutional guarantees of procedural due process only become operative where there is an actual or threatened impairment or deprivation of `life, liberty or property.'" (Polyvend v. Puckorius (1979), 77 Ill.2d at 293-94, 32 Ill.Dec. 872, 395 N.E.2d 1376; U.S. Const, amend. XIV; Ill. Const. 1970, art. I, § 2.) Procedural due process safeguards are triggered only when the property rights have vested. (Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548.) The supreme court concluded in Roth, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561.) In other words "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (Roth, 408 U.S. at 576, 92 S.Ct. at 2708, 33 *252 L.Ed.2d at 560.) A legacy under a will is not a vested property right, it is a future interest. Section 4-6 of the Probate Act does not violate the procedural due process rights of any legatee.

V
Fifth, the executor charges that section 4-6 creates an irrebuttable presumption of overreaching, duress, or undue influence without the requirement of proof. The requirement creates no such presumption. It merely relates to the ability of a witness to testify and subsequently, his or her spouse's right to receive a legacy under the will. In this respect it is not different than the Illinois Dead-Man's Act. (Ill.Rev. Stat.1989, ch. 110, par. 8-201.) That Act, often attacked, and with many exceptions, disqualifies the testimony of a person as to conversations with a deceased, or to any event which took place in the presence of the deceased.

VI
The next attack on the legislation is that the statute is special legislation that unfairly distributes burdens and benefits. A regulatory measure classifying persons or objects will be upheld if there is a reasonable basis for the differentiation. (Yellow Cab Co. v. Jones (1985), 108 Ill.2d 330, 91 Ill.Dec. 643, 483 N.E.2d 1278.) Here the basis of the legislation is the prevention of fraud or duress in the execution of a will. As previously pointed out that is a rational basis sufficient to overcome the charge of special legislation or unfair classification.
The standards used in determining an equal protection challenge are to be utilized in determining a challenge to the statute under the special legislation provisions of our constitution, and a statute challenged as special legislation will be upheld if the differentiation it makes between similarly situated persons bears a rational relationship to a legitimate legislative purpose. (People v. Gurell (1983), 98 Ill.2d 194, 206, 74 Ill.Dec. 516, 456 N.E.2d 18; see also Illinois Housing Development Authority v. Van Meter (1980), 82 Ill.2d 116, 124, 45 Ill.Dec. 18, 412 N.E.2d 151; Anderson v. Wagner (1979), 79 Ill.2d 295, 314, 37 Ill.Dec. 558, 402 N.E.2d 560; S. Bloom, Inc. v. Mahin (1975), 61 Ill.2d 70, 76-77, 329 N.E.2d 213.) The special legislation section of the Illinois constitution allows differentiations between similarly situated persons if the classification bears a rational relationship to a legitimate legislative purpose. (Illinois Housing Development Authority v. Van Meter (1980), 82 Ill.2d 116, 124, 45 Ill.Dec. 18, 412 N.E.2d 151, citing Anderson v. Wagner (1979), 79 Ill.2d 295, 315, 37 Ill.Dec. 558, 402 N.E.2d 560.) We held above that the legislation has a rational relationship to a legitimate State purpose, therefore we find that section 4-6 of the Probate Act does not constitute special legislation.
Finally, the executor contends that the legislation violates the Civil Rights Act of 1871 (42 U.S.C. § 1983 (1989)), in that it strips legatees married to persons who witness the execution of a will of their protected liberty and property interests. He cites no case law in support of this proposition; obviously none could be found.
Section 1983 provides in pertinent part:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (42 U.S.C. § 1983 (1989).)
Two allegations must be made to state a claim under that provision. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." (Gomez v. Toledo (1980), 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572, 577.) The executor has not properly stated a cause of action, nor do we believe that any exists for a violation of Civil Rights.
*253 The purpose of the legislation is to prevent fraud. Since the legislation has a rational basis and it applies to all persons similarly situated, it violates neither the Civil Rights legislation, equal protection, nor any other constitutional provision the mind of an imaginative lawyer can conjure.
A statute is presumed valid, and the burden is on the party challenging its validity to prove that it is unconstitutional. (Scott v. Department of Commerce & Community Affairs (1981), 84 Ill.2d 42, 50, 48 Ill.Dec. 560, 416 N.E.2d 1082; Jaris v. Public School Teacher's Pension and Retirement Fund (1974), 58 Ill.2d 15, 19, 317 N.E.2d 51.) In our judgment that burden has not been met. No matter how harsh the result may seem in the instant case, the statute at issue was enacted to prevent fraud, and we find that the statute is constitutional.
The record reflects that John Webster and his wife, Edythe, executed their wills at the same time. Four witnesses were present. Rita Bell Phelps and Martha B. Boles signed the will of Edythe Webster, while Muriel Williams and George Williams signed the will of John Webster. It is unfortunate that the spouses of Webster's legatees were the attesting witnesses to John Webster's will, for if Rita Bell Phelps and Martha B. Boles had also attested to John Webster's will, neither Edith Williams' nor Robert Williams' legacy would have lapsed. This unfortunate scenario stresses the importance of carefully choosing the attesting witnesses to a will. We note, although we cannot dictate anyone's moral duty, nothing contained in our laws or this opinion prohibits Edith Hardy from following the wishes of her deceased parents.
Accordingly, for the reasons set forth above, we affirm the decision of the trial court.
JUDGMENT AFFIRMED.
GORDON and McNULTY, JJ., concur.