*In re* ESTATE OF RICHARD V. HENRY, a Disabled Person (JPMorgan Chase Bank, N.A., as Plenary Guardian of the Estate of Richard V. Henry, Petitioner-Appellee, v. Peter H. Wemple *et al.*, Respondents-Appellants).

First District (6th Division)    Nos. 1—08—3398, 1—08—3479 cons.

Opinion filed October 16, 2009.—Rehearing denied December 8, 2009.

Eduard Adam Glavinskas, of Porikos, Rodes & Glavinskas, of Chicago, for appellant Peter H. Wemple.

David C. Kwik, of Chicago, for appellant Miroslaw Zawierucha.

Peter J. Schmeidel and Ronald D. Menna, Jr., both of Fischel & Kain, Ltd., of Chicago, for appellee.

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This is an appeal from an order granting the petition of JPMorgan Chase Bank, N.A. (petitioner or the estate), for authority to execute a codicil, a will, and a trust on behalf of its ward, the elderly Richard V. Henry, in order to change the terms of a 2004 will that was alleged to have been procured through the undue influence of his caretaker, Miroslaw "Mick" Zawierucha.

On February 7, 2004, Henry, at age 89, purportedly executed a will (the 2004 will) in which he gave a substantial part of his estate, worth nearly $5 million, to Mick and to the executor of the will, Peter Wemple. In 2006, he was adjudicated as a disabled adult due to cognitive decline, and petitioner was appointed the plenary guardian of his estate. The estate subsequently filed the petition at issue in the instant appeal, alleging that the 2004 will was not a valid expression of Henry's testamentary wishes, because of Mick's undue influence and Henry's incapacity to manage his financial affairs during that time period. It therefore sought to strike the distributive portions of the 2004 will and substitute the distributive provisions of Henry's prior will, as well as remove Wemple as executor. The trial court granted the estate's petition.

Mick and Wemple now appeal, requesting that this court reverse the trial court's orders in their entirety, or, in the alternative, that we reverse and remand for the trial court to conduct an evidentiary hearing on the matters raised by the estate's petition. For the reasons that follow, we dismiss this appeal, as we find that Mick and Wemple lack standing.

# I. BACKGROUND

It is undisputed that, on February 27, 2004, the 89-year-old Henry purported to execute a will, which is the subject of the instant petition. This will purports to override the terms of all Henry's prior wills and codicils, including Henry's most recent prior will, which is dated November 10, 1999 (the 1999 will). Wemple, Henry's nephew-in-law, is named as executor of both the 1999 and the 2004 wills.

The 1999 will distributed Henry's estate as follows: his personal property to his niece, Karen Gunst, and certain of his deceased wife's nieces and nephews; a Merrill Lynch account to Gunst; a $10,000 bequest to each of Gunst's children; various real estate and appurtenances to Wemple; and the residue of his estate, in various proportions, to the University of Chicago, the University of Chicago Hospital, the Mayo Clinic of Jacksonville, Florida, the Memorial Sloan-Kettering Cancer Institute, and Northwestern Memorial Hospital. None of Henry's estate is left to Mick. The 2004 will, by contrast, modifies this arrangement to split a substantial portion of Henry's estate between Mick and Wemple, and it also leaves Henry's home in Flossmoor, Illinois, to Mick.

It is further undisputed by the parties that, on April 11, 2006, Henry was adjudicated as a disabled adult by Judge James Riley. Petitioner was appointed the plenary guardian of Henry's estate, and his niece Gunst was appointed the plenary guardian of his person.

On November 2, 2006, prior to the filing of the petition at issue in the instant case, Henry's estate filed a citation to recover assets from Mick.[1] The citation alleged that Henry was suffering from severe dementia and that Mick had abused his position as Henry's caretaker to misappropriate approximately $1.3 million of Henry's funds. Petitioner therefore sought an order requiring Mick and Bozena to return these funds. The trial court, per Judge James Riley, granted the citation on June 4, 2008. It found that since December 31, 2003, Henry had lacked decisional capacity to manage his personal, legal, and financial affairs. It further found that Mick, as Henry's caretaker, was a fiduciary of Henry. Accordingly, it found that the transfers between him and Mick were presumptively fraudulent, and it further found that Mick had failed to overcome that presumption. Judge Riley therefore entered judgment against Mick for both compensatory and punitive damages.

---

[1]The citation also sought to recover funds from Mick's sister, Bozena Zawierucha; however, the judgment against her was reversed on appeal and she is not involved in the instant case.

Mick appealed. The case came before this court as *In re Estate of Henry*, No. 1—07—2309 (2009) (unpublished order under Supreme Court Rule 23) (*Henry I*). On February 23, 2009, we affirmed the order of the trial court with respect to Mick, finding that he had violated his fiduciary duties and "embarked on a deliberate campaign of repeated and intentional attempts to misappropriate large sums of money from Henry, who was mentally infirm and thus unable to defend himself from Mick's fraudulent conduct."

On February 22, 2008, while the appeal in *Henry I* was still pending, the estate petitioned Judge Riley for authority to execute a codicil, a will, and a trust on behalf of Henry pursuant to section 11a—18(a—5) of the Probate Act of 1975 (755 ILCS 5/11a—18(a—5) (West 2006)), which states that the probate court "may authorize the guardian to exercise any or all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability." It is this petition that is at issue in the instant appeal. In the petition, the estate alleged that the 2004 will was not Henry's valid last will and did not express Henry's true testamentary wishes, "[b]ased on this Court's findings of fraud and breach of fiduciary duties that attached to all transactions that benefited MICK, and since the ward lacked the capacity to manage his financial affairs and to execute legal documents in February of 2004." The estate further alleged that Henry's 1999 will was his valid last will and his true expression of testamentary intent, as it was executed at a time when Henry still possessed decisional capacity and before he was subject to the undue influence of Mick.

Accordingly, the estate petitioned the court to allow the estate to execute estate planning documents for Henry which, it contended, were consistent with his known wishes and which would be "free from the taint of the undue influence and fraud which was assembled upon the ward when he purportedly executed the 2004 will." In this regard, the estate submitted a proposed codicil, a proposed trust agreement, and a proposed will to the court. The proposed codicil struck the distributive provisions of the 2004 will and substituted the distributive provisions of the 1999 will; likewise, the proposed trust mirrored the distributive provisions of the 1999 will. Moreover, the trust agreement granted a number of benefits to Henry, including providing for the payment of funds from the trust property for Henry's care during his lifetime, providing protection from creditors, and facilitating the disposition of the trust estate upon Henry's death.

In addition, the three instruments provided that petitioner, rather than Wemple, would be named as trustee of the trust and executor of Henry's will. The estate acknowledged that Henry had named Wemple

as executor in the 1999 will that he executed while still in possession of his faculties, but it contended that Wemple faced a conflict of interest with respect to the proposed changes and would therefore not be a suitable trustee or executor.

Mick and Wemple filed objections to the petition, contending that the estate had not shown undue influence or Henry's lack of testamentary capacity as of the date that the 2004 will was executed. They further contended that the trial court lacked power under the Probate Act to authorize the execution of a new will on behalf of the ward. Thus, both Mick and Wemple requested that the petition be denied. In the alternative, Wemple requested on behalf of himself alone that the portions of the 2004 will granting Henry's property to Mick be stricken, but the remainder of the 2004 will be allowed to stand.

On August 8, 2008, after hearing the arguments of counsel, but without holding an evidentiary hearing, the trial court entered an order granting the estate's petition, over the objections of Mick and Wemple. In its order, the court issued the following findings:

"1. That it would be reasonable for a testator to remove from his Last Will and Testament a person now known to have betrayed his confidence and wrongly took his money and property.

2. The 2004 Last Will and Testament is not a valid expression of Richard Henry's testamentary wishes; it is nothing more that [sic] an example of Mick's overreaching and undue influence, a breach of his fiduciary relationship with Mr. Henry.

3. That the problem with the 2004 Last Will and Testament of Richard Henry is not cured or fixed by simply excising Mick out of the will as a legatee. The document as a whole is a drastic departure from dispositive provisions of the 1999 will.

4. That if this court were to simply reinstate the 1999 Last Will and Testament as the valid expression of Richard Henry's testamentary wishes it would create an insurmountable conflict with Peter Whimple [sic] as an Executor.

5. That all interested persons would still have available in a decedent's estate the opportunity to file a will contest."

Mick and Wemple filed motions to reconsider which were denied by the trial court in an order dated November 12, 2008. They then filed the instant appeal.

## II. ANALYSIS

Petitioner contends that this appeal should be dismissed for two reasons: first, that appellants lack standing to bring this appeal, as the 2004 will did not confer any protectable interest upon them, and second, that we lack jurisdiction to hear this appeal, as the orders be-

ing appealed from were not final, but merely interlocutory.[2] We consider the standing issue first, as we find it dispositive of the instant appeal.

With regard to the standing issue, petitioner argues that appellants lack standing to appeal on Henry's behalf, as they are not his guardians, and further that they lack standing to appeal on their own behalf, as any rights that the 2004 will might have conferred upon them would not become vested until Henry's death, at which point they could choose to contest the will. We agree.

■ Standing in Illinois requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492, 524 N.E.2d 561, 574-75 (1988). The purpose of the doctrine of standing is to ensure that courts resolve actual controversies between parties rather than abstract questions or moot issues. *Owner-Operator Independent Drivers Ass'n v. Bower*, 325 Ill. App. 3d 1045, 1050, 757 N.E.2d 627, 631 (2001). An actual controversy exists with respect to a particular party where "the underlying facts of the case are not moot or premature; there must be a concrete dispute that admits of an immediate and definitive determination of the party's rights." *Bower*, 325 Ill. App. 3d at 1050, 757 N.E.2d at 631; see *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 604-05, 488 N.E.2d 1040, 1049-50 (1986) ("The possibility of a future actual controversy is too remote to support standing to bring suit"). Whether an actual controversy between the parties exists is reviewed *de novo. Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 938, 902 N.E.2d 146, 151 (2009).

■ At the outset, appellants argue that petitioner has waived the issue of standing by acquiescing to their participation in the proceeding on the petition. They cite *Greer* for the proposition that "lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court." *Greer*, 122 Ill. 2d at 508, 524 N.E.2d at 582. An argument could be made that lack of standing, insofar as it is based on the lack of any injury in fact, is not waivable. Standing is not merely a procedural technicality, but rather a component of justiciability (*In re Estate of Wellman*, 174 Ill. 2d 335, 344, 673 N.E.2d 272, 276 (1996); *In re Estate of Burgeson*, 125 Ill. 2d 477, 485, 532 N.E.2d 825, 828 (1988)), which, in turn, is required under the Illinois Constitution for a court to have subject matter jurisdiction over a case. *Belleville Toyota, Inc. v. Toyota Motor Sales*,

---

[2]While, under the facts of this case, the ward died during the course of this appeal, both parties have agreed in oral argument that this cause retains its original posture in every respect, without regard to the intervening death.

*U.S.A., Inc.*, 199 Ill. 2d 325, 335, 770 N.E.2d 177, 184 (2002) (defining justiciability as "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests"), citing Ill. Const. 1970, art. VI, §9. The issue of subject matter jurisdiction cannot be waived and may be raised at any time. *Belleville*, 199 Ill. 2d at 333-34, 770 N.E.2d at 184. *Greer* is inapposite on this point, because it dealt with standing under a specific statute, namely, section 11—13—15 of the Illinois Municipal Code (65 ILCS 5/11—13—15 (West 2006)), rather than the basic constitutional requirement stated in *Belleville* that parties to a lawsuit must have adverse legal interests. *Greer*, 122 Ill. 2d at 508, 524 N.E.2d at 582. However, in any event, we need not decide this issue, because even if waiver of the standing issue were possible, " ' "[w]aiver is a bar upon the parties and not upon the court." ' " *People v. Exson*, 384 Ill. App. 3d 794, 798, 896 N.E.2d 844, 848 (2008), quoting *People v. Villanueva*, 382 Ill. App. 3d 301, 305, 887 N.E.2d 765 (2008), quoting *People v. Roberts*, 299 Ill. App. 3d 926, 931, 702 N.E.2d 249 (1998). As all the facts necessary for adjudication of petitioner's standing argument are before us, we shall consider the merits of petitioner's contention.

■ Petitioner first contends that Mick and Wemple lack standing to challenge the trial court's order on behalf of Henry. In support, it cites *Struck v. Cook County Public Guardian*, 387 Ill. App. 3d 867, 877, 901 N.E.2d 946, 954 (2008), in which the court stated that "an individual who is not the ward's guardian does not have standing to appeal a decision of the circuit court on behalf of the ward." Thus, in *Struck*, a son of an adult ward lacked standing to appeal the circuit court's visitation orders on her behalf because he was not her guardian. *Struck*, 387 Ill. App. 3d at 877, 901 N.E.2d at 954, citing *In re Guardianship of Austin*, 245 Ill. App. 3d 1042, 1047, 615 N.E.2d 411, 414 (1993) (appellant lacked standing to challenge the scope of circuit court orders on behalf of certain wards, because appellant was not the guardian of those wards); see *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 929, 689 N.E.2d 282, 286 (1997) (general rule is that, to have standing, a party must assert its own legal rights and interests, rather than the rights of third parties). Likewise, Mick and Wemple lack standing to appeal the circuit court's orders to the extent that they are appealing on behalf of Henry.

■ Appellants do not deny the validity of the *Struck* rule. However, they contend that they are not appealing on behalf of Henry, but rather, they are appealing on behalf of themselves, since the trial court's order deprives them of the benefits they would have derived if Henry's estate were distributed according to the terms of the 2004

will. They contend that *Struck* is therefore distinguishable, since unlike the *Struck* appellant, they have personally been aggrieved by the trial court's order granting the estate's petition. Petitioner, on the other hand, contends that they have no greater right to bring this appeal on behalf of themselves than they would on behalf of Henry, because a will of a living testator confers no present interest in property, but merely a future interest that is insufficient to provide grounds for standing. Rather, under petitioner's view of the law, if appellants seek to challenge the court's authority to approve the trial court's order, their proper recourse is to file a will contest upon the death of the testator, when their rights, if any, under Henry's prior will would have vested. For the reasons discussed below, we agree with petitioner.

Our supreme court has defined a will as "an instrument by which a person makes a disposition of his property to take effect *after his death.*" (Emphasis added.) *Noble v. Fickes*, 230 Ill. 594, 600, 82 N.E. 950 (1907); see *Lloyd v. Treasurer*, 401 Ill. 520, 525, 82 N.E.2d 470, 472 (1948) (will takes effect on date of testator's death). It has no legal effect until the testator's death. *Fleming v. Fleming*, 367 Ill. 97, 100 (1937). Accordingly, "[a] legacy under a will is not a vested property right; it is a future interest." *In re Estate of Webster*, 214 Ill. App. 3d 1014, 1022, 574 N.E.2d 245, 252 (1991). Thus, the *Webster* court held that legatees have no present property interest, and therefore no due process rights, in the property of a living testator. *Webster*, 214 Ill. App. 3d at 1022, 574 N.E.2d at 251-52. The court explained that while the testator yet lives, the legatees do not have any " 'legitimate claim of entitlement' " to the testator's property that would trigger due process rights in that property. *Webster*, 214 Ill. App. 3d at 1022, 574 N.E.2d at 251, quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972). *Cf. In re Estate of Mocny*, 257 Ill. App. 3d 291, 294, 630 N.E.2d 87, 91 (1993) (although the Probate Act grants a statutory right of inheritance to a surviving spouse, this right "exists only as an expectancy" prior to the testator's death, and until that point, "the spouse possesses absolutely no claim with respect to this statute against any of the testator's individually held assets").

This conclusion, that a will confers no rights upon a legatee until the death of the testator, is in keeping with the law of wills in other states. As the Supreme Court of Michigan has said:

" 'An expectancy or chance is a mere hope, unfounded in any limitation, provision, trust or legal act whatever; such as the hope which an heir apparent has of succeeding to the ancestor's estate. This is sometimes said to be a bare or mere possibility, and, at

other times, less than a possibility. But it is less than a possibility in the specific sense of the term possibility. For, it is no right at all, in contemplation of law, even by possibility; because, in the case of a mere expectancy, nothing has been done to create an obligation in any event; and where there is no obligation, there can be no right because right and obligation are correlative terms.' " *In re Estate of Finlay*, 430 Mich. 590, 600-01, 424 N.W.2d 272, 277 (1988), quoting J. Smith, *An Original View of Executory Interest in Real & Personal Property* §71, at 23 (1845).

See also, *e.g.*, *Turner v. Scott*, 51 Pa. 126, 134 (1867) (will "vest[s] no present interest but only appoints what is to be done after the death of the maker," which is why the maker of the will retains the power to revoke it during his lifetime); *McReynolds v. McReynolds*, 147 Mont. 476, 480, 414 P.2d 531, 533 (1966) (will may "be modified or revoked at any time prior to the testator's death and passes no interest until that time," in contrast to a deed, which confers a present interest); *In re Estate of Lundgren*, 250 Iowa 1233, 1236-37, 98 N.W.2d 839, 841 (1959) (a will "operates only upon and by reason of the maker's death. Until then it is ambulatory. By its execution the maker parts with no rights and divests himself of no part of his estate and no rights accrue to, or vest in, any other person"); *Timberlake v. State-Planters Bank of Commerce & Trusts*, 201 Va. 950, 957, 115 S.E.2d 39, 44 (1960) (during the testator's life, "his written will has no life or force, and is not operative or effective for any purpose"); *Young v. O'Donnell*, 129 Wash. 219, 224, 224 P. 682, 684 (1924) (will "operates only upon, and by reason of, the death of the maker"); *cf. Linthicum v. Rudi*, 122 Nev. 1452, 1455, 148 P.3d 746, 748 (2006) (beneficiaries of revocable *inter vivos* trust have, at most, a contingent interest that has not yet vested, and therefore they lack standing to challenge amendments that the settlor makes to the trust during her lifetime).

Consequently, the dispository provisions of the 2004 will cannot provide standing for appellants: since appellants enjoyed no vested rights under the 2004 will, they cannot claim any injury in fact from the granting of the estate's petition. Our adjudication of this appeal would not result in an "immediate and definitive determination" of appellants' rights, as is required for standing (*Bower*, 325 Ill. App. 3d at 1050, 757 N.E.2d at 631), since those rights shall not be definitively determined until Henry has died and the bequests contained in his last valid will have thereby vested. *Webster*, 214 Ill. App. 3d at 1022, 574 N.E.2d at 251-52. Just as appellants would lack standing to bring a judicial challenge during Henry's life if Henry had regained his mental faculties and executed a new will overriding the 2004 will and eliminating their shares in his legacy, so too do they lack standing to appeal the order at issue in the instant case.

Appellants dispute this contention. They cite *Mocny*, 257 Ill. App. 3d 291, 630 N.E.2d 87, for the proposition that tortious interference with inheritance expectancy is a cognizable cause of action under Illinois law, and they seek to extrapolate the conclusion that a legatee has property rights in his or her inheritance expectancy during the testator's lifetime sufficient to grant standing in cases like the present one. We disagree with this interpretation.

In *Mocny*, the court considered the right of a surviving spouse to share in the estate of his or her deceased spouse under section 2—8 of the Probate Act, which reads, "If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims." 755 ILCS 5/2—8(a) (West 2006). Petitioner claimed that her deceased husband had deprived her of this spousal share by making various *inter vivos* transfers that left his estate with no assets upon his death. *Mocny*, 257 Ill. App. 3d at 293, 630 N.E.2d at 90. In analyzing this claim, the court began by stressing the rule that this marital right does not vest until the testator's death: "It should be noted that prior to the testator's death, the spouse possesses absolutely no claim with respect to this statute against any of the testator's individually held assets. Prior to the death of the testator, the spouse's interest exists only as an expectancy." *Mocny*, 257 Ill. App. 3d at 294, 630 N.E.2d at 91, citing *Toman v. Svoboda*, 39 Ill. App. 3d 394, 397-98, 349 N.E.2d 668, 672 (1976) (statutory marital right is the "right of a surviving spouse" to a fee interest in the whole or a specified fraction of all the "property which the deceased spouse own[ed] in fee at the date of his or her death" and prior to that date is "a pure expectancy"). Thus, the general rule is that an owner of property has the right to dispose of property during his lifetime in any manner that he sees fit, and such disposition of property does not impinge upon any rights of his or her spouse. *Mocny*, 257 Ill. App. 3d at 294, 630 N.E.2d at 91. However, the court also recognized the possibility that an *inter vivos* transfer might be a "sham transaction"—that is to say, an illusory transaction, without any genuine donative intent, where ownership in fact would remain with the transferor until the transferor's death—which would function essentially as a disposition by will. *Mocny*, 257 Ill. App. 3d at 295-96, 630 N.E.2d at 91-92. Such a transfer would be invalid, and the assets at issue would be considered part of the testator's estate in determining the spouse's statutory share. *Mocny*, 257 Ill. App. 3d at 295, 630 N.E.2d at 91.

In this context, the court further states that petitioner also filed a complaint for tortious interference with expectancy, the elements of

which are (1) the existence of an expectancy, (2) defendants' interference with that expectancy, (3) that the interference involved conduct that was tortious in itself, such as fraud or duress, (4) a reasonable certainty that the expectation would have been realized, and (5) damages. *Mocny*, 257 Ill. App. 3d at 298, 630 N.E.2d at 93. It is this language which appellants focus upon. They would have us draw the conclusion that a testator's spouse has a protectible interest in the testator's property while the testator is yet living. However, such an interpretation would contradict the plain language of the decision, quoted above, explicitly stating that a spouse has no claimable interest until the death of the testator. *Mocny*, 257 Ill. App. 3d at 294, 630 N.E.2d at 91; see also *Toman*, 38 Ill. App. 3d at 398, 349 N.E.2d at 672. More overridingly, such an interpretation ignores the fact that the cause of action contemplated by the *Mocny* court is one brought by a spouse *after* the testator's death, not before, since the right to the marital estate does not accrue until the death of the testator. *Mocny*, 257 Ill. App. 3d at 293, 630 N.E.2d at 90. Only upon the death of the testator would the right of the spouse to the marital property vest so as to enable her to pursue sham or fraudulent transfers that were designed to falsely deplete the marital estate. *Mocny*, 257 Ill. App. 3d at 295-96, 630 N.E.2d at 91-92. Thus, contrary to appellants' contention, *Mocny* is not inconsistent with the position of the estate, in that the right of a legatee does not vest and cannot be enforced until the death of the testator.

Appellants further contend that standing is implied in the notice requirement of section 11a—18(a—5) of the Probate Act, under which Henry's estate brought the instant petition. This section states:

> "The probate court, upon petition of a guardian, other than the guardian of a minor, and after notice to *all other persons interested* as the court directs, may authorize the guardian to exercise any and all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability." (Emphasis added.) 755 ILCS 5/11a—18(a—5) (West 2006).

Appellants, as "persons interested" under this provision, were notified of the petition below. They argue that the language of this provision indicates that they had an interest in Henry's property at the time of the filing of the petition that would constitute grounds for standing. However, this notice requirement does not establish that appellants have any *present vested* interest in the assets that they were slated to receive under the 2004 will, merely that they have an expectancy in such assets. As discussed above, a mere expectancy is insufficient to grant them standing, as their interest in the assets at stake has not yet vested. *Webster*, 214 Ill. App. 3d at 1022, 574 N.E.2d at 251-52; *Mocny*, 257 Ill. App. 3d at 294-95, 630 N.E.2d at 91.

Rather, appellants' proper recourse, if they believe the will and the trust created through the trial court's August 8, 2008, order are invalid, would be to file a will contest and a trust contest pursuant to section 8—1 of the Probate Act after Henry's death. The Probate Act provides that within six months after a will has been admitted to probate, "any interested person" may file a petition to contest the validity of that will. 755 ILCS 5/8—1(a) (West 2008) (providing for the filing of petitions to contest the validity of a will after a testator has died and his will has been admitted to probate); see *In re Estate of Roeseler*, 287 Ill. App. 3d 1003, 1013, 679 N.E.2d 393, 401 (1997) (any legatee under a prior will has standing to file a will contest if that person would receive any benefit were the present will to be set aside). So, too, with respect to trusts, the Probate Act provides:

> "An action to set aside or contest the validity of a revocable inter vivos trust agreement or declaration of trust to which a legacy is provided by the settlor's will which is admitted to probate shall be commenced within and not after the time to contest the validity of a will as provided in subsection (a) of this Section and Section 13—223 of the Code of Civil Procedure." 755 ILCS 5/8—1(f) (West 2008).

Likewise, section 13—223 of the Code of Civil Procedure provides that "[a]n action to set aside or contest the validity of a revocable inter vivos trust agreement *** shall be commenced within and not after the time to contest the validity of a will as provided in the Probate Act of 1975." 735 ILCS 5/13—223 (West 2008). Thus, once Henry's will has been admitted to probate, appellants will have full opportunity for adjudication of their present claims regarding the validity of the will and the trust put into place by Henry's estate.

Appellants contend that this present action is their only opportunity for them to challenge the trial court's order granting the estate planning documents at issue in the instant case, because an adverse judgment in the instant case would collaterally estop them from raising another challenge subsequent to Henry's death. In support, they cite the California case of *Murphy v. Murphy*, 164 Cal. App. 4th 376, 78 Cal. Rptr. 3d 784 (2008), where the court so held. Although the issue is not fully discussed in *Murphy*, the law in Illinois is clear that the legatees must wait until after the death of the testator before they can challenge the testator's disposition of his property. Consequently, since we hold that, under the law of Illinois, appellants have no standing to pursue this appeal, there is no danger here that they will be collaterally estopped in their efforts to pursue their remedies under a will contest or, for that matter, an action contesting the trust. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 391, 757 N.E.2d

471, 478 (2001) (collateral estoppel is an equitable doctrine, and it cannot be applied where an injustice would result); see also *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 558-59, 834 N.E.2d 468, 472 (2005) (for collateral estoppel to apply, there must have been a previous proceeding in which a final judgment on the merits was rendered); accord *LaSalle Bank National Ass'n v. Village Of Bull Valley*, 355 Ill. App. 3d 629, 635, 826 N.E.2d 449, 456 (2005) (doctrine of collateral estoppel prevents retrial of an issue that has been fairly and completely resolved in a prior proceeding).

Accordingly, for the foregoing reasons, we dismiss Mick and Wemple's appeal for lack of standing on their part.

Appeal dismissed.

CAHILL, P.J., and R.E. GORDON, J., concur.