[718 NYS2d 282]

OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION et al., Appellants, v MICHAEL H. URBACH, as Commissioner of the New York State Department of Taxation and Finance, Respondent.

First Department, December 7, 2000

## APPEARANCES OF COUNSEL

*Paul D. Cullen, Sr.,* of counsel (*Cary B. Samowitz* and *Joseph A. Black* on the brief; *Lord, Bissell & Brook,* and *Cullen Law Firm,* attorneys), for appellants.

*Deon J. Nossel* of counsel (*Robert A. Forte* on the brief; *Eliot Spitzer, Attorney General* of the State of New York, attorney), for respondent.

## OPINION OF THE COURT

RUBIN, J.

In this class action, plaintiffs seek to invalidate the fuel use tax (Tax Law § 523) as violative of the Commerce Clause (US Const, art I, § 8, cl [3]) insofar as the tax is imposed on commercial vehicles operated on the New York Thruway. Plaintiffs contend that the tax, which is calculated on the mileage driven on New York highways, constitutes an undue burden on interstate commerce because it is not fairly related to any service provided by the State. On this appeal from an order dismissing the complaint, plaintiffs argue (a) that the State provides no services in connection with the operation of the New York Thruway, and (b) that such services as are provided to commercial vehicles by the New York State Thruway Authority are fully paid for through the collection of tolls and other revenues, no part of which is contributed by the State. This Court concludes that the tax is not a user fee, but a consumption tax that is uniformly applied to interstate and intrastate activities. Therefore, the order of dismissal is affirmed.

*Plaintiff* Owner-Operator Independent Drivers Association is a not-for-profit corporation with its principal place of business in Missouri. Its members own and operate motor carrier equip-

ment. The business association comprises some 40,000 persons and entities, including residents of all 50 States and Canada. Individual plaintiffs Raymond L. Kasicki and Harry Kijowksi, residents of Ohio and New York, respectively, operate commercial motor vehicles on New York State highways. Defendant Michael H. Urbach is the former Commissioner of the New York State Department of Taxation and Finance, which is responsible for the collection of the disputed tax.

Article 21-A of the Tax Law imposes "a tax on fuel use for the privilege of operating any qualified motor vehicle upon the public highways of this state" (Tax Law § 523 [a]). The tax is computed on the fuel "used by a carrier in its operations within this state during each reporting period" (Tax Law § 523 [b]). A "qualified motor vehicle" is a commercial vehicle having a gross weight exceeding 26,000 pounds or three or more axles (Tax Law § 521 [b] [1] [i], [ii]). As to the amount of fuel actually consumed by operation of qualified vehicles within the State, each "carrier" (Tax Law § 521 [c]) is required to remit payment, on a quarterly basis (Tax Law § 526 [a], [b]), in an amount equivalent to the fuel and sales taxes imposed on motor fuel or diesel fuel, as applicable, purchased in this State, not to exceed a maximum rate of 7% (Tax Law § 523 [b]). Revenues from the New York fuel tax are dedicated to the State's highway and bridge trust fund (Tax Law §§ 515, 528 [a]).

The obvious thrust of the statute is to tax fuel *consumed* within New York borders as though it were fuel *purchased* in New York State and, indeed, the law provides a credit for the amount of State fuel and sales taxes paid on fuel actually purchased here (Tax Law § 524). Finally, it is undisputed that the tax complies with the International Fuel Tax Agreement, pursuant to which each carrier pays all fuel use taxes imposed by the various participating jurisdictions to a single base State, which is responsible for properly allocating the receipts.

In dismissing the complaint, the IAS Court held that plaintiffs failed to demonstrate that the fuel use tax subjects similarly situated interstate and intrastate commercial interests to differential treatment and, thus, does not meet the threshold test for a Commerce Clause violation (182 Misc 2d 576, 578-579, citing *Matter of Tamagni v Tax Appeals Tribunal*, 91 NY2d 530, 539, *cert denied* 525 US 931). "Both interstate and intrastate drivers are taxed based on in-State fuel usage and solely on such in-State usage; there is no differential treatment of intrastate and interstate commercial interests" (*supra*,

at 579). Even assuming that plaintiffs were able to establish differential treatment, the IAS Court continued (at 579), the challenge fails under *Complete Auto Tr. v Brady* (430 US 274, *reh denied* 430 US 976), which holds (at 279) that a tax is valid if it is "applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." As the IAS Court noted, plaintiffs concede that " 'there is almost a perfect correlation between the use of the road and the amount of the tax paid' " (182 Misc 2d, *supra*, at 580, quoting plaintiffs' memorandum of law).

On appeal, plaintiffs argue that "[t]he fuel tax at issue is obviously and inescapably a user fee or user tax" and that the State has not met "its burden of showing that it provides additional services to Thruway users equal to the 5-7.5 cents per mile charged under the fuel use tax." They conclude that the tax "is not reasonably related to services or facilities provided and is, therefore, an undue burden on commerce."

The defect in this argument is that a carrier operating exclusively within the borders of this State is subject to exactly the same tax as a carrier engaged in the interstate shipment of goods. That is, the local carrier is identically taxed on fuel actually consumed in the course of operating its vehicles on the New York Thruway. Thus, plaintiffs have not identified any adverse effect on interstate commerce that requires judicial scrutiny. As pointed out in *General Motors Corp. v Tracy* (519 US 278, 299), the fundamental objective of the Commerce Clause is "preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors."

The parties vigorously dispute the role of discrimination as an essential element in a violation of the Commerce Clause. Defendant Department of Taxation relies upon the Court of Appeals statement in *Matter of Tamagni v Tax Appeals Tribunal* (*supra*, at 539) that

> " 'the first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it "regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce" * * *. As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that

benefits the former and burdens the latter' ([*Oregon Waste Sys. v Department of Envtl. Quality*, 511 US 93,] 99, quoting *Hughes v Oklahoma*, [441 US 322,] 336). If there is no differential treatment of identifiable, similarly situated in-State and out-of-State interests, there is no dormant Commerce Clause violation."

Plaintiffs, on the other hand, view this interpretation as overly expansive, noting that it is not essential to allege discrimination to state a valid claim. Therefore, they assert that it was precipitous for the IAS Court to have summarily dismissed the alleged violation of the Commerce Clause. In support of their position, plaintiffs rely on the United States Supreme Court's decision in *General Motors Corp. v Tracy* (*supra*, at 298, n 12), which states:

"our cases have indicated that even nondiscriminatory state legislation may be invalid under the dormant Commerce Clause, when, in the words of the so-called *Pike* undue burden test, 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits,' *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). * * * [A] small number of our cases have invalidated state laws under the dormant Commerce Clause that appear to have been genuinely nondiscriminatory, in the sense that they did not impose disparate treatment on similarly situated in-state and out-of-state interests, where such laws undermined a compelling need for national uniformity in regulation." (*E.g.*, *Kassel v Consolidated Freightways Corp.*, 450 US 662 [length of trucks]; *Bibb v Navajo Frgt. Lines*, 359 US 520 [size of truck mud flaps]; *Southern Pac. Co. v State of Arizona ex rel. Sullivan*, 325 US 761 [length of trains].)

Plaintiffs have failed to allege how the need for regulatory consistency is implicated in this case. Therefore, while plaintiffs may have demonstrated that, in the abstract, a Commerce Clause violation may be upheld without a showing of discrimination, they have not established that the *Pike* undue burden test has any application to the facts of this case. In the absence of demonstrable preference, it is incumbent upon plaintiffs to identify some prohibited interference with interstate commerce under the *Pike* undue burden test to obviate the need to establish that their commercial interests have

received disparate treatment from those of similarly situated intrastate operators.

That the Court of Appeals language in *Tamagni* might be taken to be overly expansive in view of the *Pike* test merely illustrates the caution stated by the Court in *Matter of Staber v Fidler* (65 NY2d 529, 535, quoting *Dougherty v Equitable Life Assur. Socy.*, 266 NY 71, 88), " 'No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association.' " *Tamagni* (*supra*), involving the taxation of income based upon residency in multiple States, entails no national policy with regard to regulation and, thus, there was no reason for the Court to discuss a limited exception to the general rule requiring a violation of the Commerce Clause to be supported by a demonstration that a State has discriminated against the economic interests of interstate operators.

What remains of plaintiffs' position is the bald assertion that the fuel use tax imposed by Tax Law § 523 is a user fee. Because any user fee that fails to fairly reflect the value of the service provided by the State that imposes it is, ipso facto, an undue burden on interstate commerce, plaintiffs contend that a violation of the Commerce Clause is asserted. Plaintiffs, however, do not present convincing arguments to support their contention that the disputed tax is a user fee.

Cases construing taxes imposed for the "privilege" of conducting activities within the levying State normally involve general revenue assessments, not user fees (*e.g.*, *Complete Auto Tr. v Brady*, 430 US 274, *supra* [privilege of doing business]; *Commonwealth Edison Co. v Montana*, 453 US 609, 629 ["substantial privilege of mining coal"]; *Colonial Pipeline Co. v Traigle*, 421 US 100 [doing business]). Therefore, a tax levied merely "for the privilege of operating any qualified motor vehicle upon the public highways" (Tax Law § 523 [a]) is not, by the plain import of its language, a user fee. By contrast, the State "highway use tax" is imposed "for the privilege of operating any vehicular unit upon the public highways of this state and for the purpose of recompensing the state for the public expenditures incurred by reason of the operations of such vehicular units on the public highways of this state" (Tax Law § 503 [1]).

The plain language of the fuel use tax does not support plaintiffs' contention. Neither have plaintiffs demonstrated to the satisfaction of this Court that the fuel use tax is "designed and defended as a specific charge imposed by the State for the

use of state-owned or state-provided transportation or other facilities and services" (*Commonwealth Edison Co. v Montana, supra,* at 621) so as to place it beyond the scope of the test set forth in *Complete Auto Tr. v Brady* (*supra*). As the *Commonwealth* Court stated in a footnote (at 622, n 12), "One commentator has suggested that these 'user' charges 'are not true revenue measures and * * * the considerations applicable to ordinary tax measures do not apply' " (quoting Hartman, State Taxation of Interstate Commerce, at 20, n 72 [1953]). Plaintiffs herein allege only that the calculation of the fuel use tax based upon mileage amassed on the State's highways and the ultimate disposition of funds derived from the levy in the highway and bridge trust fund together operate to render the measure a use tax. As plaintiffs succinctly phrase it, "Since it is calculated on the use of State highways, it is a use tax."

This argument fails to accord appropriate significance to the role of apportionment in assessing the propriety of a State tax measure under the Commerce Clause. The function of apportionment in avoiding unfavorable treatment of interstate economic activity has been compared to that of the *Pike* undue burden test. As stated in *General Motors Corp. v Tracy* (*supra,* at 299, n 12), "In the realm of taxation, the requirement of apportionment plays a similar role by assuring that interstate activities are not unjustly burdened by multistate taxation. See generally *Oklahoma Tax Comm'n v Jefferson Lines, Inc.,* 514 U.S. 175, 184-185 (1995) (discussing 'internal' and 'external' consistency tests for apportionment of state taxes)." The International Fuel Tax Agreement assures fairness in the allocation of tax revenues by fixing each participant's share of the proceeds on the number of miles actually traveled through the jurisdiction.

Plaintiffs nevertheless argue that the fuel use tax violates the test set forth in *Complete Auto Tr. v Brady* (*supra,* at 279) because it is not "fairly related to the services provided by the State" (*see also, Commonwealth Edison Co. v Montana, supra,* at 617). It is plaintiffs' contention that, because the New York State Thruway Authority is "self-supporting," as stated in its 1997 Annual Report, it needs no additional revenue for the operation of the highway. Therefore, they contend, the State provides no benefit with respect to the operation of commercial vehicles on the roadway that would justify the tax under the *Complete Auto* test.

Plaintiffs' reading of the fourth prong of the *Complete Auto* test is overly restrictive. Merely because the assessed taxes are

not necessary to support the use of the services or facilities upon which they are levied does not require the conclusion that the State confers no benefit upon plaintiffs. As the Court stated in *Oklahoma Tax Commn. v Jefferson Lines* (*supra*, 514 US, at 199):

> "The fair relation prong of *Complete Auto* requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity. If the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event."

To be sure, as noted in *Commonwealth Edison Co. v Montana* (*supra*, at 629), "when the measure of a tax bears no relationship to the taxpayers' presence or activities in a State, a court may properly conclude under the fourth prong of the *Complete Auto Transit* test that the State is imposing an undue burden on interstate commerce." However, in the same paragraph, the Court emphasized that, when the tax is reasonably apportioned, "the taxpayer will realize, in proper proportion to the taxes it pays, '[the] only benefit to which the taxpayer is constitutionally entitled * * * [:] that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.' " (*Id.*, quoting *Carmichael v Southern Coal & Coke Co.*, 301 US 495, 522.) Often cited as a benefit bestowed by the taxing jurisdiction is the provision of "police and fire protection" (*supra*, at 628). It bears emphasis that police, fire, ambulance and paramedic services are made available to plaintiffs either by various localities within the vicinity of the highway or by State entities other than the New York State Thruway Authority. In view of the concededly precise correlation between plaintiffs' use of the Thruway and the resultant tax imposed, the measure complies with the fair relation test of *Complete Auto Tr. v Brady* (*supra*, at 279).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Jane Solomon, J.), entered December 3, 1999, which granted defendant Tax Commissioner's motion to dismiss plaintiffs' declaratory judgment action and which adjudged and declared that Tax Law § 523 does not violate the Commerce Clause, should be affirmed, without costs.

SULLIVAN, P. J., ROSENBERGER, MAZZARELLI and BUCKLEY, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered December 3, 1999, affirmed, without costs.