OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION *et al.*, Plaintiffs-Appellants, v. GLEN L. BOWER, Director, The Department of Revenue, Defendant-Appellee.

First District (5th Division)   No. 1—99—4497

Opinion filed September 21, 2001.

Lord, Bissell & Brook, of Chicago (R.R. McMahan and Albert E. Fowerbaugh, Jr., of counsel), and The Cullen Law Firm, of Washington, D.C. (Paul D. Cullen, Sr., and Joseph A. Black, of counsel), for appellants.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Erik G. Light, Assistant Attorney General, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

On February 19, 1999, plaintiffs, on behalf of themselves and all persons engaged in the interstate operation of commercial motor vehicles on the Illinois Tollway, filed an action for declaratory, injunctive and monetary relief against defendant, Glen Bower, Director, Illinois Department of Revenue. The plaintiffs, a trucking association, trucking company, and several owner-operators of commercial motor vehicle carriers, sought: (1) a declaration that the Illinois motor fuel use tax (MFUT), as applied to commercial motor vehicles traveling on the Illinois Tollway, was unconstitutional; (2) to enjoin the defendant from collecting the tax for fuel consumed on the Illinois Tollway; and (3) a refund of any fuel taxes paid by commercial carriers based on mileage traveled on the Illinois Tollway.

The trial court granted defendant's motion under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)), to dismiss plaintiffs' complaint. The court held that Owner-Operated Independent Drivers Association (OOIDA) lacked standing, that plaintiffs failed to join all necessary parties, that plaintiffs failed to exhaust all administrative remedies, that the voluntary payment doctrine required dismissal and that the MFUT was constitutional. Plaintiffs now timely appeal.

On appeal, plaintiffs argue that: (1) they were not required to exhaust administrative remedies; (2) the voluntary payment doctrine is not a bar to this action; (3) the MFUT is in the nature of a user fee and is violative of the commerce clause; (4) even if the MFUT is a use tax, it is violative of the commerce clause; (5) OOIDA has standing in this case; and (6) all necessary parties have been joined.

For purposes of this appeal, the State does not rely on the conten-

tions that the plaintiffs' complaint was subject to dismissal on the basis of the voluntary payment doctrine, the exhaustion of remedies doctrine, or failure to join all other International Fuel Tax Agreement (IFTA) jurisdictions in this litigation. Therefore, these claims are not before our court on appeal.

For the following reasons, we affirm.

## I. BACKGROUND

Plaintiff OOIDA is a not-for-profit association of persons and entities who own and operate motor carrier equipment. OOIDA was founded in 1973, was incorporated in Missouri, and has over 40,000 members in the United States and Canada.

Plaintiff Raymond L. Kasicki is an owner-operator who resides in Ohio. Kasicki, in operating his motor vehicle carrier, utilizes the Illinois Tollway. Kasicki pays his Illinois fuel use tax through the company from which he leases his commercial carrier, Mawson & Mawson, Ltd., a motor carrier based in Pennsylvania.

Plaintiff Marino Motor Services, Inc., is a motor carrier operating a fleet of commercial motor vehicles based in Illinois. Vehicles operated by Marino utilize the Illinois Tollway. Marino pays its Illinois fuel use tax directly to the defendant.

Plaintiff Harry Kijowski is an owner-operator who resides in New York. Kijowski, in operating his motor vehicle carrier, utilizes the Illinois Tollway. Kijowski pays his Illinois fuel use tax to the New York Department of Taxation And Finance.

Defendant, Glen L. Bower, is the Director of the Illinois Department of Revenue, and in that capacity is responsible for the collection of the MFUT.

In 1953, the Illinois General Assembly authorized the creation of the Illinois Tollway System. The Illinois Tollway (the Tollway) is operated by the Illinois State Toll Highway Authority, an instrumentality of the State of Illinois. The cost of operating the Tollway is paid for through tolls, restaurant and service station concessions and similar earnings.

■ In 1929, the legislature enacted the Motor Fuel Tax Law (Ill. Rev. Stat. 1929, ch. 120, pars. 417 through 439), which imposed a tax upon the privilege of operating any motor vehicle upon the public highways of the state. In 1977, the legislature amended the Motor Fuel Tax Law to include an additional tax measure. Ill. Rev. Stat. 1979, ch. 120, pars. 417 through 439.22. The MFUT was imposed on the use of motor fuel on state highways by commercial motor vehicles. The MFUT is a tax imposed upon the consumption of fuel within the State of Illinois under section 13a of the Motor Fuel Tax Law (35

ILCS 505/13a (West 1998)). In Illinois, the MFUT is approximately 28 cents per gallon of fuel consumed on the state highways. A motor carrier who purchases fuel outside Illinois but consumes the fuel inside Illinois is required to pay the fuel tax to Illinois. A carrier who purchases motor fuel within Illinois but consumes the fuel outside of the state is entitled to a credit or refund for the tax paid. The tax is included in the price of fuel in Illinois and is collected at the pump.

The Motor Fuel Tax Law provides for the disposition of the collected taxes. The proceeds are divided among the State Construction Account Fund, the State Boating Act Fund, the Grade Crossing Protection Fund, the Transportation Regulatory Fund, the Vehicle Inspection Fund, and the Road Fund. The generated taxes also pay for the cost of administering the Motor Fuel Tax Law.

■ In 1991, Congress enacted the Intermodal Surface Transportation Efficiency Act of 1991 (49 U.S.C. § 101 *et seq.* (1994)) (the Act). The Act compels states to adopt laws or regulations that conform to the IFTA. Under the IFTA, motor carrier owner-operators pay all their state fuel tax obligations quarterly to their base state, the state in which they are registered. The base states then transfer the appropriate funds to the taxing state, the state where the fuel tax liability was incurred. This system prevents owner-operators from having to make multiple payments to different states in which they operate. Illinois, as a taxing state, maintains IFTA fuel tax returns for only Illinois-based taxpayers.

On February 19, 1999, plaintiffs filed a complaint against the defendant. Plaintiffs claimed that collection of the MFUT calculated based on the number of miles driven by commercial vehicles on the Tollway is not fairly related to any services provided by the state in connection with interstate travel. Plaintiffs maintain that they pay tolls to the Illinois State Toll Highway Authority for their use of the Tollway. Since their use of the Tollway is fully paid for by the tolls, plaintiffs contend that the additional collection of fuel use taxes violates the commerce clause. Plaintiffs only challenge the imposition of the MFUT as to fuel consumed on the Tollway.

## II. ANALYSIS

■ We begin our analysis with the recognition that statutes carry a strong presumption of constitutionality and that the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 377, 689 N.E.2d 1057 (1997). We review *de novo* the constitutionality of a statute. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441, 701 N.E.2d 1056 (1998). Where the constitutionality of a statutory

provision is challenged, the courts presume that the legislature intended to comply with the constitution. *Tully v. Edgar*, 171 Ill. 2d 297, 313, 664 N.E.2d 43 (1996). When deciding if the attacking party's burden has been met, the courts have a duty to sustain legislation as constitutional whenever possible. See *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522, 527, 693 N.E.2d 349 (1998).

In addition, the standard of review of a trial court's dismissal of a complaint pursuant to section 2—619 is also *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

## A. OOIDA'S STANDING

Plaintiffs argue that OOIDA has standing to challenge the MFUT and, therefore, the trial court improperly dismissed its complaint. Specifically, plaintiffs maintain that because individual OOIDA members have been harmed by the assessment of the MFUT for their use of the Tollway, they have standing in this case. Defendant argues that OOIDA has suffered no injury in fact due to the MFUT and, therefore, has no real interest in the outcome of the action.

■ The doctrine of standing is designed to insure that the courts are accessible to resolve actual controversies between parties and not "address abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid." *Jenner v. Wissore*, 164 Ill. App. 3d 259, 267, 517 N.E.2d 1220 (1988). "[C]ourts do not rule on the constitutionality of a statute where the complaining party is only theoretically affected by the alleged invalidity of the provision." *Moran Transportation Corp. v. Stroger*, 303 Ill. App. 3d 459, 470, 708 N.E.2d 508 (1999), citing *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 599, 488 N.E.2d 1040 (1986). To have an "actual controversy," a party must show that the underlying facts of the case are not moot or premature; there must be a concrete dispute that admits of an immediate and definitive determination of the party's rights. *Illinois Municipal League*, 140 Ill. App. 3d at 606.

■ Under Illinois law, an association's status is, by itself, insufficient to allow it to assert an action for declaratory and injunctive relief on behalf of its members. To have standing to maintain such an action, an association must have a recognizable interest in the dispute peculiar to itself and capable of being affected. *Nolan v. Hillard*, 309 Ill. App. 3d 129, 138, 722 N.E.2d 736 (1999), citing *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 377, 362 N.E.2d 298 (1977). An association does not have standing to sue on behalf of its members, even those members allegedly affected by the challenged

action, "unless it has been or will be directly injured and therefore has a personal claim related to its own property, or that it has suffered or will suffer injury to a substantive legally protected interest in its individual capacity." *Cable Television & Communications Ass'n of Illinois v. Ameritech Corp.*, 288 Ill. App. 3d 354, 357, 680 N.E.2d 445 (1997).

In *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 502 N.E.2d 283 (1986), a class of individuals who were subject to a boat mooring tax challenged the constitutionality of the tax imposed by city ordinance. This court held that the Chicagoland Boat Owners Association (CBOA), a voluntary association consisting of individual boat owners who use the Chicago rivers and lakefront, and Chicago Yachting Association (CYA), a not-for-profit corporation and voluntary association, did not have standing to sue. This court stated that the associations had shown no direct injury. "The CBOA and the CYA are not subject to the tax. Neither association owns moorings or pays mooring fees in Chicago." *Forsberg*, 151 Ill. App. 3d at 370. This court further noted that "the associations here do not pay mooring fees. Only the members of the associations pay mooring fees." *Forsberg*, 151 Ill. App. 3d at 371.

The case at bar is directly analogous. OOIDA has failed to allege a direct injury. As the trial court noted, OOIDA is an association of owners and operators, but is neither an owner nor operator itself and does not pay any of the MFUT being challenged. OOIDA's only injury alleged in plaintiffs' complaint centers on the interest of its individual members. OOIDA argues that because its members pay the MFUT, it is directly injured. However, as *Forsberg* demonstrates, that claim must fail.

OOIDA's claim that it has standing pursuant to federal guidelines must also fail. Under that standard, "an association has standing to bring suit in its representative capacity in certain situations, notwithstanding the fact that the association suffered no direct injury." *Forsberg*, 151 Ill. App. 3d at 371. Illinois courts have explicitly rejected that standard. See *Forsberg*, 151 Ill. App. 3d at 371. ("Illinois decisions *** clearly hold that an association's representational capacity alone is not enough to give it standing"); see also *Cable Television*, 288 Ill. App. 3d at 358 (it is well established that Illinois courts are not required to follow federal law on issues of standing). As the remaining plaintiffs have standing, we address their arguments on appeal.

## B. CONSTITUTIONALITY OF THE MOTOR FUEL USE TAX

Congress is granted the power "to regulate Commerce" under the commerce clause of the United States Constitution. U.S. Const.

art. I., § 8, cl. 3. "While expressed as a grant of power to Congress, it is also well established that the commerce clause 'of its own force protects free trade among the States' [citation] and may serve in certain circumstances as a basis for invalidating state laws that interfere with interstate commerce." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 260, 665 N.E.2d 1246 (1996), citing *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 81 L. Ed. 2d 540, 545, 104 S. Ct. 2620, 2622 (1984).

Initially, we must determine the nature of the MFUT. While plaintiffs assert that the MFUT is, in implementation, a "user fee," the defendant maintains that the MFUT is a general revenue "use tax." A user fee is a fee or tax "designed and defended as a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities and services." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621, 69 L. Ed. 2d 884, 897, 101 S. Ct. 2946, 2955 (1981). In a supplemental brief, plaintiffs argue that the Supreme Court changed the definition of a user fee in *United States v. United States Shoe Corp.*, 523 U.S. 360, 363-64, 140 L. Ed. 2d 453, 457, 118 S. Ct. 1290, 1292 (1998). There, the Supreme Court said a user fee is "a charge designed as compensation for Government-supplied services, facilities, or benefits." *United States v. United States Shoe Corp.*, 523 U.S. at 361, 140 L. Ed. 2d at 454, 118 S. Ct. at 1292. This language is not substantively different from that used in *Commonwealth Edison*. We also note that plaintiffs relied heavily upon the definition of "user fee" found in *Commonwealth Edison* in their opening brief. Any distinction does not change our analysis.

Plaintiffs insist that the challenged MFUT is a user fee because it is paid for compensation of the use of the highways. Plaintiffs argue that this is evident because motor vehicles must purchase fuel to use the highway. Therefore, according to the plaintiffs, "the only question is whether the tax is in excess of fair compensation for the privilege of using state roads," and because the privilege of using the Tollway has been paid for by tolls, the MFUT is disproportionate to the cost of the services or facilities provided by the state and therefore violates the commerce clause.

■ We hold that the MFUT is a general revenue tax and not a user fee. A plain reading of the statute describes the MFUT as "a tax *** upon the use of motor fuel upon highways of this State by commercial motor vehicles." 35 ILCS 505/13a (West 1998). The MFUT is, in implementation, a tax designed to prevent the avoidance of Illinois sales tax and Illinois motor fuel tax. As the defendant correctly asserts, the MFUT is a species of use tax. Just as the state's general use

tax imposes "[a] tax *** upon the privilege of using in this State tangible personal property purchased at retail from a retailer" (35 ILCS 105/3 (West 1998)), the MFUT is intended as a "tax upon the privilege of operating each motor vehicle *** upon the public highways and the waters of this State" (35 ILCS 505/17 (West 1998)). Just as the legislature enacted the use tax " 'to prevent avoidance of the [retailers' occupation] tax by people making out-of-State purchases, and to protect Illinois merchants against such diversion of business to retailers outside of Illinois' " (*Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 418, 665 N.E.2d 795 (1996), quoting *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301, 303 (1996)), so too the legislature enacted the MFUT to prevent out-of-state truckers who drive through Illinois from avoiding purchasing fuel and paying taxes in Illinois. It requires truckers to either purchase motor fuel in Illinois, thereby paying the MFUT, or if they purchase fuel outside Illinois, they then pay an outstanding fuel tax obligation to their base state, which will then remit a sufficient portion to Illinois to reimburse Illinois for the MFUT that the trucker would have paid had he purchased the fuel in Illinois. Every person who purchases gasoline or diesel fuel in Illinois pays sales tax and motor fuel tax on that purchase. The MFUT thus places commercial motor vehicles in the same position as all other persons who purchase gasoline or diesel fuel in Illinois. Similarly, all vehicles driven on the Tollway must pay tolls for the privilege, even if they purchased their gasoline in Illinois.

Plaintiffs' argument that because the MFUT is calculated based on the use of state highways it therefore must be a user fee is unpersuasive. The Appellate Division of the New York Supreme Court recently rejected a similar challenge by OOIDA to New York's version of the MFUT to the extent it was assessed on fuel consumed on the New York Thruway (a toll road). There, the court held: "Cases construing taxes imposed for the 'privilege' of conducting activities within the levying state normally involve general revenue assessments, not user fees." *Owner-Operator Independent Drivers Ass'n v. Urbach*, 718 N.Y.S.2d 282, 285, 279 A.D.2d 171, 176 (2000), citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). A tax levied only "for the privilege of operating any qualified motor vehicle upon the public highways" is not, by the plain implication of its language, a user fee. *Owner-Operated Independent Drivers Ass'n*, 718 N.Y.S.2d at 285, 279 A.D.2d at 176. As to plaintiffs' argument that as the MFUT is calculated based on the use of state highways it is a user fee, the court in *Owner-Operated* noted, "this argument fails to accord appropriate significance to the role of apportionment in assessing the propriety of a State tax measure under

the Commerce Clause." *Owner-Operated*, 718 N.Y.S.2d at 286, 279 A.D.2d at 177. "In the realm of taxation, the requirement of apportionment plays a similar role by assuring that interstate activities are not unjustly burdened by multistate taxation." *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12, 136 L. Ed. 2d 761, 779 n.12, 117 S. Ct. 811, 824 n.12 (1997). The method of apportionment of the MFUT, as instructed by the International Fuel Tax Agreement, is designed to assure fairness by basing the tax upon the number of miles actually traveled on Illinois' roads. The collection scheme alone, therefore, is not proof that the MFUT is implemented as a user fee.

An examination of Illinois' disposition of the funds from the tax lends additional support to defendant's argument that the MFUT is a general revenue tax. The proceeds are deposited in the State Construction Fund, the State Boating Act Fund, the Grade Crossing Protection Fund and the Transportation Regulatory Fund among others. The statute authorizes a portion of the funds to be distributed to municipalities and counties without a requirement that they expend the funds on transportation related purposes. 35 ILCS 505/8(e)(2) (West 1998). So, while some expenditures are clearly transportation related, some funds receiving proceeds from the MFUT are not related to transportation at all. The wide array of disposition evinces Illinois' intent to use the proceeds from the tax for general revenue purposes.

The cases cited by plaintiffs criticizing user fees invalidated fees that were specifically designed to compensate for specific charges and were not proportional to the cost of the service. For example, in *Ingels v. Morf*, 300 U.S. 290, 81 L. Ed. 653, 57 S. Ct. 439 (1937), a caravanning permit fee of $15 was purportedly designed to reimburse the state for expenses that the state may incur in the administration and enforcement of the California Caravan Act (1935 St. at Cal. §§ 2 through 4, 6) and the added expense of policing the highways for safety purposes. The funds from the fee were specifically allocated to account for the cost of the Caravanning Act's imposition. The fee was invalidated because the proceeds from the fee vastly exceeded the cost. The tax at issue in the case at bar is clearly distinguishable from the "fee" discussed in the case above. The MFUT is not laid to compensate for a specific charge. Therefore, for all of the above-mentioned reasons, we hold that the MFUT is a tax and not a user fee.

■ Plaintiffs argue that even if the MFUT is held to be a tax, it is still unconstitutional because it is not fairly related to the services provided by the state. Under the four-part test announced in *Complete Auto*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076, a state tax will only be sustained as nonviolative of the commerce clause if the tax: (1) is applied to an activity with a substantial nexus with the taxing state;

(2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state.

The fourth prong of the test is the only prong at issue in this case. Plaintiffs' complaint alleges that the Illinois State Toll Highway Authority receives no funds from the state for the construction, maintenance or operation of the Tollway. Plaintiff maintains that the tolls collected by the authority more than cover the operating costs of the Tollway. Therefore, plaintiff argues, "since the Tollway is financially independent of the State of Illinois, the collection of fuel use taxes on fuel consumed on the Tollway is not fairly related to the services provided by the State."

As the Supreme Court noted in *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 199-200, 131 L. Ed. 2d 261, 281, 115 S. Ct. 1331, 1345 (1995):

> "The fair relation prong of *Complete Auto* requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity. If the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event. Interstate commerce may thus be made to pay its fair share of state expenses and ' "contribute to the cost of providing *all* governmental services, including those services from which it arguably receives no direct 'benefit.' " ' [Citations.]" *Oklahoma Tax Comm'n*, 514 U.S. at 199-200, 131 L. Ed. 2d at 281, 115 S. Ct. at 1345.

*Complete Auto*'s fourth criterion requires only that the measure of the tax be reasonably related to the extent of the contact, since it is the taxpayer's presence or activities in the state that may properly be made to bear a just share of the tax burden. *Commonwealth Edison Co. v. Montana,* 453 U.S. at 626, 69 L. Ed. 2d at 900, 101 S. Ct. at 2958.

In *Commonwealth Edison Co.,* the State of Montana imposed a tax upon the mining of coal within the state. Commonwealth Edison filed suit, alleging that the coal mining tax violated the commerce clause as Montana took in much more revenue from the tax than the state provided in services to the utility. The Supreme Court rejected this argument, holding, "we have little difficulty concluding that the Montana tax satisfies the fourth prong of the *Complete Auto Transit* test." *Commonwealth Edison Co.,* 453 U.S. at 626, 69 L. Ed. 2d at 900, 101 S. Ct. at 2958. The Court reasoned that as the tax was measured as a percentage of the value of the coal taken, "the Montana tax is in 'proper proportion' to appellant's activities within the State and,

therefore, to their 'consequent enjoyment of the opportunities and protections which the State has afforded' in connection with those activities." *Commonwealth Edison Co.*, 453 U.S. at 626, 69 L. Ed. 2d at 900, 101 S. Ct. at 2958, quoting *General Motors Corp. v. Washington*, 377 U.S. 436, 441, 12 L. Ed. 2d 430, 435, 84 S. Ct. 1564, 1568 (1964).

Similarly, in *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 665 N.E.2d 1246 (1996), an "airport departure tax," a per-passenger charge on providers of ground transportation services from O'Hare and Midway Airports, imposed by a metropolitan authority to fund a convention center expansion, was found to satisfy the fair relationship requirement and was, therefore, upheld as constitutional. The court first found that the charge was not a "user fee" within the meaning of *Commonwealth Edison*. *Allegro Services, Ltd.*, 172 Ill. 2d at 264. The court then held that " '[w]hen a tax is assessed in proportion to a taxpayer's activities or presence in a State, the taxpayer is shouldering its fair share of supporting the State's provision of "police and fire protection, the benefit of a trained work force, and 'the advantages of a civilized society.' " ' [Citations.]" *Allegro Services, Ltd.*, 172 Ill. 2d at 265, quoting *Commonwealth Edison Co.*, 453 U.S. at 627, 69 L. Ed. 2d at 900, 101 S. Ct. at 2958.

The court in *Allegro* expanded the reasoning put forth in *Commonwealth Edison* by holding that "[t]his rationale applies with equal force whether tax revenues are collected for general governmental purposes or are earmarked for a specific public purpose as in the present case." *Allegro Services, Ltd.*, 172 Ill. 2d at 265. In that case, the airport departure taxes collected were used to alleviate the financial burden of the expansion of McCormick Place. We disagree with the argument in plaintiffs' supplemental brief that the holding in *Allegro* provides a basis for us to distinguish the holding in *Owner-Operated Independent Drivers Ass'n*, 718 N.Y.S.2d 282, 279 A.D.2d 171.

■ The MFUT clearly comports with the requirements of the fourth prong of the *Complete Auto* test. First, the tax at issue here is reasonably related to the plaintiffs' activities within the State of Illinois. The tax is calculated based upon the gallons of motor fuel used by commercial vehicles in interstate commerce while traveling on Illinois' highways. The measurement of the tax is, therefore, directly proportional to plaintiffs' activities in the state.

Second, plaintiffs, as commercial vehicle owners and operators, derive benefits from the privilege of traversing on Illinois' highways. The truck owner-operators utilize the Tollway for commercial purposes, namely, to transport their goods and services. But the benefit directly relating to driving on the Tollway is clearly not the only benefit the owner-operators receive. As the trial court noted, "plaintiffs' presence

in this lawsuit is just one of the benefits the state provides." In citing to *Goldberg v. Sweet*, 488 U.S. 252, 267, 102 L. Ed. 2d 607, 620-21, 109 S. Ct. 582, 592 (1989), the trial court highlighted:

> " '[I]nterstate commerce may be required to contribute to the cost of providing all governmental services, including those services from which it arguably receives no direct "benefit." ' [Citation.] *** The fourth prong of the *Complete Auto* test focuses on the wide range of benefits provided to the taxpayer, not just the precise activity connected to the interstate activity at issue *** a taxpayer's receipt of police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society satisfied the requirement that the tax be fairly related to benefits provided by the State to the taxpayer." (Emphasis omitted.)

As the defendant correctly acknowledges, plaintiffs, as highway users, also benefit from the state's expenditures on keeping the roadway safe, *i.e.*, administrative systems for monitoring driving privileges. The MFUT is reasonably related to plaintiffs' activities within the state. Plaintiffs, who derive direct and indirect benefits from those state services, should be held to assume their fair share of supporting the state's provision of those benefits.

Third, as discussed earlier, the proceeds generated from the MFUT are used for many purposes. The trial judge stated that "nowhere in the challenged MFUT did the General Assembly state these taxes are intended to assist in the state in building and maintaining state roads and highways." Nor do they have to be used only for those purposes. As the court stated in *Clark v. Poor*, 274 U.S. 554, 557, 71 L. Ed. 2d 1199, 1201, 47 S. Ct. 702, 703 (1927), "since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the Plaintiffs." The state has authority to appropriate funds to the Tollway Authority. *Graham v. Illinois State Toll Highway Authority*, 182 Ill. 2d 287, 695 N.E.2d 360 (1998). Since the Tollway is not a wholly independent entity as plaintiffs suggest, plaintiffs cannot argue that the imposition of a tax based on fuel consumed on the Tollway is not related to state services.

Finally, it should be acknowledged that plaintiffs use the Tollway voluntarily. The Tollway is their chosen method of traveling through Illinois. Commercial carriers are certainly not forced to utilize the Tollway. The thrust of plaintiffs' argument is that they must pay twice for use of the Tollway, once through tolls and again through the MFUT. A similar argument was made and rejected in *Hammerman v. Illinois State Toll Highway Authority*, 148 Ill. App. 3d 259, 498 N.E.2d 795 (1986). In *Hammerman*, Acme Barrel Company intervened in a class

action lawsuit, on behalf of all motorists who use the Tollway. Acme's complaint alleged, among other things, that as users of the tollway must pay motor fuel use taxes on the fuel consumed by their vehicles on the Tollway, in addition to tolls, they were unconstitutionally charged twice for the privilege of using the public highways of Illinois. In rejecting Acme's argument that the toll rate structure was "illegally excessive," this court explicitly held that "[h]aving been given the power—indeed, the responsibility—to levy and collect tolls for the construction, operation and maintenance of the tollway system, we see no basis for Acme's claim that defendants' exercise thereof violates their constitutional rights, particularly since tollway usage—and the attendant payment of tolls as compensation therefore—is a matter of personal choice." *Hammerman*, 148 Ill. App. 3d at 266.

Accordingly, as the MFUT is fairly related to the services provided by the state, we find it satisfies the four prongs of the test annunciated in *Complete Auto Transit* and is constitutional. Consequently, the trial court properly dismissed plaintiffs' complaint.

Accordingly, for the foregoing reasons we affirm the decision of the trial court.

Affirmed.

GREIMAN and THEIS, JJ., concur.