# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Interstate Trucks, LLC v. State*, 2011 IL App (4th) 100603

---

| | |
|---|---|
| Appellate Court Caption | INTERSTATE TRUCKS, LLC, Plaintiff-Appellant, v. THE STATE OF ILLINOIS, Acting Through the DEPARTMENT OF REVENUE, and BRIAN A. HAMER, Director, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4–10–0603 |
| Filed | June 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's decision affirming the Department of Revenue's determination that the trucks plaintiff dealer purchased in Illinois for resale at its dealership in Tennessee and drove back to Tennessee needed single-trip permits was reversed by the appellate court, since the trucks did not fit the definition of "commercial motor vehicle" in section 1.16 of the Motor Fuel Tax Law, and, furthermore, plaintiff was not required to purchase the single-trip permits as reimbursement to the State of Illinois for the motor-fuel-use tax because fuel for the trucks was purchased in Illinois, as evidenced by an affidavit of plaintiff's owner. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County No. 09–MR–349; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Duane D. Young (argued), of LaBarre, Young & Behnke, of
Springfield, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro,
Solicitor General, and Eric Truett (argued), Assistant Attorney
General, of counsel), for appellees.

Panel

PRESIDING JUSTICE KNECHT delivered the judgment of the court,
with opinion.
Justices Steigmann and Cook concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Interstate Trucks, LLC, appeals the decision of the Illinois Department of Revenue (Department) affirming the Department's issuance of four notices of tax liability in the amount of $1,000 per notice for plaintiff's failure to obtain and display single-trip permits as required under section 13a.5 of the Motor Fuel Tax Law (Tax Law) (35 ILCS 505/13a.5 (West 2006)).

¶ 2    Plaintiff sought administrative review and the circuit court affirmed the Department. Plaintiff appeals, claiming the Department erred in the following respects: (1) it erred in its construction of section 13a.5 of the Tax Law because it held "a single trip through the State of Illinois" included trucks purchased and fueled in Illinois and then driven to Tennessee, and (2) it erred in not recognizing the exception established in section 1.16 of the Tax Law (35 ILCS 505/1.16 (West 2006)). For the following reasons, we reverse the circuit court's decision affirming the Department's decision.

¶ 3                                  I. BACKGROUND

¶ 4    Plaintiff was a truck dealer with its sole place of business in the State of Tennessee. In March 2007, plaintiff purchased five trucks from Central Illinois Trucks, Inc., located in Springfield, Illinois. These trucks were purchased for resale at plaintiff's dealership in Tennessee.

¶ 5    Later in March 2007, plaintiff arranged for its agents to transport the purchased trucks from Springfield, Illinois, to its dealership in Tennessee. In preparation for the transportation of the trucks, Central Illinois Trucks, Inc., provided the trucks with seven-day permits ($10 each) as required under section 3–811(c) of the Illinois Vehicle Code (625 ILCS 5/3–811(c) (West 2006)), "which were acquired by the seller, in bulk, from the Illinois Secretary of State." The seven-day permits allowed plaintiff to lawfully operate the trucks purchased in

Illinois on Illinois highways. 625 ILCS 5/3–811 (West 2006).

¶ 6        When plaintiff's agents were transporting the trucks to Tennessee, four of the trucks were stopped by agents in the Department's Bureau of Criminal Investigations at mile post 46 on Interstate 57. As a result of the stop, the Department issued four notices of tax liability to plaintiff because plaintiff had failed to acquire motor-fuel-use-tax licenses (price dependent on whether reinstatement fee is due and whether applicant is required to post bond) or single-trip permits ($20 each) before transporting the trucks as required under sections 13a.4 and 13a.5 of the Tax Law (35 ILCS 505/13a.4, 13a.5 (West 2006)). The seven-day permits plaintiff had obtained for the trucks were not sufficient to cover any motor-fuel-use tax due.

¶ 7        Plaintiff protested the issuance of the notices of tax liability and requested a hearing with the Department. Prior to the hearing, the parties stipulated (1) plaintiff was a truck dealer having no place of business in the State of Illinois; (2) the trucks were purchased from Central Illinois Trucks, Inc., for resale at plaintiff's Tennessee dealership; (3) the trucks were stopped by the Department; (4) the trucks had seven-day permits issued by the Illinois Secretary of State to drive them from one dealership to another; (5) plaintiff was not a common carrier and not in the business of transporting persons or property for hire; (6) the vehicles in question were exiting the State of Illinois and traveling to plaintiff's business in the State of Tennessee; (7) the trucks in question were semi-tractors and not pulling any trailers or cargo; and (8) none of the trucks had motor-fuel-vehicle-tax licenses and display decals.

¶ 8        Additionally, prior to the hearing, the parties agreed Bruce Thomas, manager of Central Illinois Trucks, Inc., would not be called as a witness at the hearing and, instead, his testimony would be admitted into evidence through an affidavit. In the affidavit, Thomas stated in order to enable the transportation of the trucks, Central Illinois Trucks purchased approximately 30 gallons of fuel for each truck for a total of approximately 150 gallons of fuel. Three fuel receipts were attached to the affidavit, each showing the purchase of approximately 50 gallons of fuel. Further, the affidavit stated the trucks were equipped with sufficient fuel to drive from Springfield, Illinois, to Tennessee and, in particular, sufficient fuel to drive over the Illinois border to Paducah, Kentucky.

¶ 9        The hearing was held on November 13, 2008, in front of an administrative law judge (ALJ), who recommended affirming the issuance of the notices of tax liability. At the hearing, the Department argued plaintiff was required to have a single-trip permit affixed to each truck pursuant to section 13a.5 of the Tax Law. The Department also argued the single-trip permits were required because plaintiff met the definitions of "commercial motor vehicle" as set forth in section 1.16 of the Tax Law and "motor carrier" as defined in section 1.17 of the Tax Law (35 ILCS 505/1.16, 1.17 (West 2006)).

¶ 10       Further, the Department argued the admission of the fuel receipts into evidence was insufficient to prove the fuel for all five trucks was purchased in Illinois because two of the trucks would have been fueled at two different pumps. In particular, the Department noted only three receipts were admitted into evidence for five trucks, each receipt indicated approximately 50 gallons of fuel had been purchased, and Central Illinois Trucks purchased approximately 30 gallons of fuel for each truck. Additionally, the Department noted the

vehicle identification numbers (VIN) written on the receipts matched the VINs of only two of the trucks in question. The Department argued these discrepancies undermined Thomas's credibility.

¶ 11 In contrast, plaintiff argued the single-trip permits were not required because (1) section 13a.5 of the Tax Law did not apply because the Illinois trucks were bought and fueled in Illinois, the retail tax for the fuel purchases was paid in Illinois, and the trucks exited Illinois; (2) plaintiff did not operate the trucks for a single trip through Illinois, or from a point on the border to a point within Illinois and then return to the border as required under section 13a.5 of the Tax Law; and (3) plaintiff, as a dealer, fit into an exception established in the definition of "commercial motor vehicle" in section 1.16 of the Tax Law.

¶ 12 On March 30, 2009, the ALJ recommended affirming the issuance of the notices of tax liability but also recommended reducing three of the notices from $2,000 to $1,000 because the stops were all considered a first-time occurrence. The ALJ determined the trucks fell within the definition of "commercial motor vehicle" because the trucks were "motor vehicles that [were] used, designed or maintained for the transportation of persons or property, and they have [three] axles."

¶ 13 The ALJ noted the definition of "commercial motor vehicle" included an exception for "commercial motor vehicles operated solely within [Illinois] for which all motor fuel is purchased within [Illinois]." However, the ALJ determined this exception did not apply to plaintiff's trucks because the facts were undisputed plaintiff drove the trucks out of the State and to Tennessee. Also, the ALJ agreed with the Department and determined Thomas's affidavit regarding the fuel purchase was implausible because one vehicle was not normally fueled at two different pumps.

¶ 14 Additionally, the ALJ determined plaintiff fell within the definition of "motor carrier." The ALJ noted a " 'motor carrier' [was] any person who operate[d] or causes to be operated any commercial motor vehicle on any highway in Illinois. 35 ILCS 505/13a.5 [(West 2006)]." The ALJ determined plaintiff was a "motor carrier" because "it operated commercial motor vehicles in Illinois on the day in question."

¶ 15 Further, the ALJ determined plaintiff was required to obtain single-trip permits under section 13a.5 of the Tax Law because the trucks fit within the definition for "commercial motor vehicle," and plaintiff fit within the definition of "motor carrier." The ALJ noted a single-trip permit authorized "operation of a commercial motor vehicle 'for a single trip through the State of Illinois, or from a point on the border of this State to a point within and return to the border.' [35 ILCS 505/13a.5 (West 2006)]." The ALJ stated the trucks were used for a single trip through Illinois because the trucks were picked up in Springfield, Illinois, and driven to Tennessee.

¶ 16 In April 2009, defendant, Brian A. Hamer, Director of defendant Department (Director), accepted the ALJ's recommendation. In May 2009, plaintiff filed a complaint for administrative review. The circuit court heard arguments and in July 2010 affirmed the Director's decision.

¶ 17 Specifically, the circuit court determined plaintiff's trucks did fit within the exception established in the definition of "commercial motor vehicle" in section 1.16 of the Tax Law.

The court noted plaintiff's argument regarding all the fuel being purchased in Illinois became moot as soon as the trucks exited Illinois.

¶ 18 Additionally, the circuit court noted a prior version of section 1.16 of the Tax Law (35 ILCS 505/1.16 (West 1992)) included an exclusion in the "commercial motor vehicle" definition for "commercial motor vehicles owned by a manufacturer or dealer and held for sale, even though incidentally moved or operated on the highway." According to the court, this version of the statute excluded Illinois dealers who "sold such vehicles to a buyer who is just moving them out of [Illinois]." Thus, the circuit court concluded the removal of this exception from the commercial-motor-vehicle definition showed the legislature intended "for this situation to require the single[-]trip permit."

¶ 19 This appeal followed.

¶ 20                                              II. ANALYSIS

¶ 21 Plaintiff appeals, claiming the Department erred in the following respects: (1) it erred in its construction of section 13a.5 of the Tax Law because it concluded "a single trip through the State of Illinois" included trucks purchased and fueled in Illinois and then driven to Tennessee, and (2) it erred in not recognizing the exception established in the definition of "commercial motor vehicle" set forth in section 1.16 of the Tax Law. For the following reasons, we reverse the circuit court's decision affirming the Department's decision.

¶ 22                                          A. Standard of Review

¶ 23 Plaintiff argues the applicable standard of review is *de novo* because this case presents an issue of statutory construction, and no findings of fact were at issue. The Department argues this case does not present a pure question of law. Instead, it contends plaintiff's arguments regarding the Department's application of the statutory language to the facts raise mixed questions of law and fact and should be reviewed for clear error. The Department further contends plaintiff's arguments regarding the meaning of section 1.16 of the Tax Law and the scope of the permits available under section 13a.5 of the Tax Law are issues of law and should be reviewed *de novo*.

¶ 24 On administrative review, the applicable standard of review is based on whether the case involves an issue of law, an issue of fact, or a mixed question of law and fact. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386-87, 925 N.E.2d 1131, 1143 (2010). When the case involves a question of law, the standard of review is *de novo*. *Provena Covenant Medical Center*, 236 Ill. 2d at 387, 925 N.E.2d at 1143.

¶ 25 However, when the case involves a question of fact, the reviewing court determines whether the findings of fact are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008). "An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident." *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018.

¶ 26 Additionally, a mixed question of law and fact involves a dispute as to whether the facts

of the case satisfy the applicable statutory requirements. *Provena Covenant Medical Center*, 236 Ill. 2d at 387, 925 N.E.2d at 1143. When the case involves a mixed question of law and fact, the agency's findings are reviewed for clear error. *Provena Covenant Medical Center*, 236 Ill. 2d at 387, 925 N.E.2d at 1143. "An administrative decision will be set aside as clearly erroneous only when the reviewing court is left with the definite and firm conviction *** a mistake has been committed." *Provena Covenant Medical Center*, 236 Ill. 2d at 387-88, 925 N.E.2d at 1143.

¶ 27     The determination of whether plaintiff was required to obtain single-trip permits to transport its trucks to Tennessee under section 13a.5 of the Tax Law and section 1.16 of the Tax Law is a matter of statutory construction. Therefore, the standard of review is *de novo*.

¶ 28                                   B. Single-Trip Permits

¶ 29     First, plaintiff argues the single-trip-permit requirement was not applicable to its trucks because the trucks were purchased in Illinois by an out-of-state resident, the trucks were fueled in Illinois, and the trucks were driven from the Illinois dealership, out of Illinois, and to plaintiff's dealership in Tennessee. In particular, plaintiff argues the statutory language in section 13a.5 of the Tax Law requiring a commercial motor vehicle to purchase a single-trip permit "for a single trip through the State of Illinois" does not apply to trucks just exiting Illinois. Further, plaintiff argues its trucks were not required to have single-trip permits because the trucks did not fall within the definition of "commercial motor vehicle" set forth in section 1.16 of the Tax Law.

¶ 30     The primary goal of statutory construction is to "ascertain and give effect to the drafters' intention, and the most reliable indicator of intent is the language used, which must be given its plain and ordinary meaning." *People v. Smith*, 236 Ill. 2d 162, 166-67, 923 N.E.2d 259, 262 (2010).

¶ 31     Section 13a.4 of the Tax Law (35 ILCS 505/13a.4 (West 2006)) provides as follows:

"Except as provided in Section 13a.5 of this Act, no motor carrier shall operate in Illinois without first securing a motor fuel use tax license and decals from the Department or a motor fuel use tax license and decals issued under the International Fuel Tax Agreement by any member jurisdiction."

¶ 32     Additionally, section 13a.5 of the Tax Law (35 ILCS 505/13a.5 (West 2006)) states, in pertinent part, as follows:

"As to a commercial motor vehicle operated in Illinois in the course of interstate traffic by a motor carrier not holding a motor fuel use tax license issued under this Act, a single trip permit authorizing operation of such commercial motor vehicle for a single trip through the State of Illinois, or from a point on the border of this State to a point within and return to the border may be issued by the Department or its agents after proper application."

¶ 33     Section 1.16 of the Tax Law (35 ILCS 505/1.16 (West 2006)) defines "commercial motor vehicle" as follows:

" 'Commercial motor vehicle' means a motor vehicle used, designed, or

maintained for the transportation of persons or property and either having 2 axles and a gross vehicle weight or registered gross vehicle weight exceeding 26,000 pounds or 11,793 kilograms, or having 3 or more axles regardless of weight, or that is used in combination, when the weight of the combination exceeds 26,000 pounds or 11,793 kilograms gross vehicle weight or registered gross vehicle weight, *except for \*\*\* commercial motor vehicles operated solely within [Illinois] for which all motor fuel is purchased within [Illinois].*" (Emphasis added.)

¶ 34　　The Department argues plaintiff was required to acquire either a motor-fuel-use-tax license or single-trip permits prior to transporting its trucks from Illinois to Tennessee under sections 13a.4 and 13a.5 of the Tax Law. Additionally, the Department argues the trucks were not excluded from the definition of "commercial motor vehicle" because the trucks were not exclusively operated within Illinois. The Department further argues plaintiff's argument regarding the fuel being purchased in Illinois is irrelevant. In contrast, plaintiff argues its trucks were not included within this definition of "commercial motor vehicle" because the trucks were stopped prior to exiting Illinois and the fuel for the trucks was purchased in Springfield, Illinois.

¶ 35　　The definition of "commercial motor vehicle" excludes commercial motor vehicles operated solely within Illinois for which all motor fuel is purchased in Illinois. In the stipulation, the parties agreed the trucks "were exiting the State of Illinois from the location they had been acquired at to the location of Interstate Trucks in the State of Tennessee." Although the trucks were being transported to Tennessee, the Department's Bureau of Criminal Investigations stopped the trucks on Interstate 57 in Illinois. At the time of the stop, plaintiff's agents had exclusively operated the trucks within the State of Illinois. Additionally, Thomas's affidavit established sufficient fuel for the transportation of the trucks to the Kentucky border was purchased in Springfield, Illinois.

¶ 36　　Consequently, plaintiff's trucks did fit within the exception established in the definition of "commercial motor vehicle." Because the trucks were not considered "commercial motor vehicles" under the plain language of section 1.16 of the Tax Law, plaintiff was not required to obtain single-trip permits for the transportation of the trucks to Tennessee.

¶ 37　　Further, plaintiff was not required to obtain a motor-fuel-use-tax license because plaintiff did not fit within the definition of "motor carrier." Section 1.17 of the Tax Law (35 ILCS 505/1.17 (West 2006)) defines "motor carrier" as "any person who operates or causes to be operated any commercial motor vehicle on any highway within [Illinois]." Plaintiff's trucks do not fit within this definition because the trucks are not considered "commercial motor vehicles" under section 1.16 of the Tax Law.

¶ 38　　In *Owner-Operator Independent Drivers Ass'n v. Bower*, 325 Ill. App. 3d 1045, 1053, 757 N.E.2d 627, 633 (2001), the court stated the purpose behind the motor-fuel-use tax is to "prevent out-of-state truckers who drive through Illinois from avoiding purchasing fuel and paying taxes in Illinois." Consequently, out-of-state truckers are required to purchase either motor fuel in Illinois or pay outstanding fuel tax to their base state, which will then remit a portion of the tax to Illinois as reimbursement for the motor-fuel-use tax the trucker would have paid if the fuel was purchased in Illinois. *Bower*, 325 Ill. App. 3d at 1053, 757 N.E.2d

at 633.

¶ 39    Requiring plaintiff to purchase single-trip permits in this case would not further the purpose behind the motor-fuel-use tax. Unlike *Bower*, this case does not involve an out-of-state resident seeking to avoid paying the motor-fuel-use tax by purchasing fuel outside Illinois and then using Illinois roads. Instead, this case involves an out-of-state dealership purchasing trucks in Illinois and then attempting to transport the trucks to its dealership in Tennessee. Plaintiff was not required to purchase single-trip permits as reimbursement to the State of Illinois for the motor-fuel-use tax because fuel for the trucks was purchased in Illinois, as evidenced by Thomas's affidavit.

¶ 40    Consequently, single-trip permits authorizing operation of plaintiff's trucks for a single trip through Illinois were not required because the trucks did not fit within the definition of "commercial motor vehicle." Therefore, the circuit court's decision affirming the Department's decision is reversed.


¶ 41                              III. CONCLUSION

¶ 42    For the reasons stated, we reverse the circuit court's decision affirming the Department's decision.

¶ 43    Reversed.